# Gairt *v.* Curry Coal Mining Co. et al., Appellants.

*Workmen's compensation—Modification of order — Reinstatement of original compensation order.*

1. Where, following a compensation agreement based on total disability, an order is made terminating such agreement but directing further compensation to be paid as partial disability, "same to be determined after complainant has returned to work and his loss of earning power has been established," the workmen's compensation board has jurisdiction at any time during the period of 500 weeks to reinstate the original compensation agreement for total disability if such disability is established.

2. In such case, it is immaterial that after claimant had returned to work the board had refused the petitions filed by him for review and modification, before the final one was filed on which reinstatement was made.

3. A proceeding under the Workmen's Compensation Act is not "litigation" to which established rules and principles of common law practice are applicable.

4. Those appointed to administer the Compensation Act are vested with authority to act for the State in the capacity of parens patriæ.

Argued October 26, 1921.   Appeal, No. 49, Oct. T., 1921, by defendants, from order of C. P. Cambria Co., Sept. T., 1920, No. 411, affirming decision of the Workmen's Compensation Board, in case of Joe Gairt v. Curry Coal Mining Co. and Ætna Life Ins. Co., insurance carrier.   Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Appeal from Workmen's Compensation Board.   Before EVANS, J.

The opinion of the Supreme Court states the facts.

Decision affirmed.   Defendants appealed.

*Error assigned,* inter alia, was order, quoting it.

*William A. Challener,* with him *Clarence Burleigh* and *F. J. Hartmann,* for appellants.

*Chas. J. Margiotti,* with him *McCann & McCann* and *James W. Leech,* for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1922:

Joe Gairt, claimant and appellee, on October 10, 1919, presented a petition to the Workmen's Compensation Board to reinstate a compensation agreement, which had been entered into May 4, 1917, between him, the Curry Coal Mining Company, defendant, and the Ætna Life Insurance Company, insurance carrier (intervenor), for injuries which Gairt had sustained, on March 10, 1917, while in the course of his employment as a coal miner for defendant.

On July 29, 1918, the compensation authorities made an order that the agreement of May 4, 1917, should "terminate," for "total disability," as of July 9, 1918, and that further compensation, "to be determined after claimant has returned to work and his loss of earning power has been established," should be paid for "partial disability." Payments ceased as of July 9, 1918. Between December 2, 1918, and March 24, 1919, three separate petitions were presented by Gairt, asking for review and modifications, all of which were refused. On August 24, 1920, the board, acting on the petition of October 10, 1919, first above mentioned, found that claimant was totally and permanently disabled; and it made an order reinstating the compensation agreement as of July 9, 1918. This was affirmed by the common pleas; and thereupon defendant and the insurance carrier appealed.

Appellants contend that the compensation authorities were without jurisdiction to make the order now before us, because claimant's right to receive compensation covering the period since July 9, 1918, was finally adjudicated against him by the refusal of the three prior petitions, and the board's power to act in that regard was exhausted. As to this, the court below held that the

original order, stopping payments to claimant, "clearly left open," to be fixed at a subsequent date, "the payments to be made on account of the injury, the amount of these payments to be determined on a later investigation"; adding: "The last investigation satisfied the board, on the question of fact, that the claimant had never been able to resume [his normal] work......and it made, inter alia, the following findings of fact, amply supported by testimony: 'These injuries are permanent, and have rendered him unfit for the occupation in which he was engaged at the time of the injury, namely, that of a miner......Claimant made a real effort to work, but was unable to do so, frequently being compelled to move about on his hands and knees because of the pain and inconvenience suffered in his efforts to comply with the referee's order......[He] has demonstrated in his efforts, as well as by the medical testimony taken in these proceedings, that he is totally and permanently disabled.' [Again it may be said], the questions as to the extent of the injury, and the extent of its interference with the ability of the claimant to labor, were clearly left open by the order and decree of July 29, 1918, and the investigation subsequently made satisfied the board that the injury resulted in total disability......The referee, in the first instance, very properly undertook to relieve the defendant from the obligation to pay until the exact status of the claimant could be determined ......, [and]......the testimony in the proceedings [for review and modification] did not develop what the present testimony clearly reveals."

We quite agree with the conclusion reached by the compensation board and affirmed by the learned court below; and, since the chairman of the former, in his opinion filed in this case, so correctly states the law, we quote therefrom as follows: "The act gives to the board jurisdiction over an agreement [for purposes of review] at any time during the life of the agreement, or during the period of time [it has] to run. A disability agree-

ment contemplates a total payment of compensation to the claimant for a period of 500 weeks. If, for any good cause......, by action of the board, the employer is relieved of payment of compensation, at any time during that period, such action is entirely to the benefit of the employer, and he cannot complain if, subsequently, during the 500 weeks, a changed status of the claimant revives the employer's liability to pay compensation. When the referee made his order [stopping payments], the use of the word 'terminate' was unfortunate, as it [likewise] was, in the original act. It was beyond the power of the referee to find that total disability had so absolutely ceased that there could be no further liability on the part of the employer to pay the injured man on that basis. All the referee could [properly] find, as a fact, under the medical testimony at the time, was that the malignant features of total disability had disappeared; he could not find, nor could any human being know, that, at some time in the future, within the running of the agreement as contemplated by the law, there would not be a recurrence of total disability (as there has been in this case). When a workman is injured and a compensation agreement is entered into, it is within the minds of the parties, or at least the law imputes the intention to the parties, that such agreement may run 500 weeks, if the injury develops total disability for that length of time; so that, when the board, either of itself, or by one of its referees, relieves the employer of such payment, it merely suspends that payment or that obligation, waiting further developments of injuries. The legislature recognized this fact when it included in the amended law (see section 413, Act of June 2, 1919, P. L. 642, 661) the word 'suspend.' Many times previous to that amendment the board had made suspensory orders to relieve an employer from present payment, but preserving at the same time the right of payment to the injured man, should there be a recurrence of disability."

As said in the matter quoted above, the first order, stopping payments, merely suspended the obligation to pay, and during the period indicated, it was within the power of the compensation authorities to revise their order, to accord with the requirements of the case as the facts might demand.

The fundamental error of appellants lies in their idea that a proceeding under the Workmen's Compensation Law is "litigation," and that established rules and principles of common law practice should be applied thereto; whereas the fact is quite the contrary.

Although the arrangement inaugurated by the Act of June 2, 1915, P. L. 735, to pay standardized compensation in cases of injury or death, rests on the theory of contract between employer and employee (Anderson v. Carnegie Steel Co., 255 Pa. 33, 39, 40), yet, in administering this plan, those vested with authority act for the State, in its capacity of parens patriæ, and the relevant legislation clearly contemplates that, after a compensation agreement has been filed, or an order for compensation made, persons affected may apply for review and modification during the time the agreement or order has to run: Article IV, section 423, Act of 1915; article IV, section 408, and particularly article IV, section 413, Act of 1919; Hughes v. American Int. S. S. Corp., 270 Pa. 27, 30; also see Kuca v. Lehigh V. C. Co., 268 Pa. 163, 166, holding that procedural parts of the Act of 1919 apply to pending cases. Under this benevolent piece of legislation, one in the position of the present claimant may, from time to time, come to those in authority saying, "Since you stopped payments to me, facts have developed which show my need of, and right to, compensation; I pray you to look into these facts and determine what, if anything, I am now entitled to receive"; and that, in substance, is what the present claimant did.

We need refer to but one remaining point suggested by appellant: While the board makes reference to the fact that it had not been demonstrated whether or not

claimant had capacity to do work other than as a miner, since no different position had been given him by defendant, yet, as shown by the quotations hereinbefore recited from the opinions of the board and court below, the conclusions of neither of those tribunals depend on the circumstance that defendant had failed to place claimant at different work, but upon other facts which prove him to be totally and permanently disabled.

The assignments of error are overruled and the judgment is affirmed.