Hudyck *v.* Wyoming Shovel Works et al.,
Appellants.

Argued December 2, 1929. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Frank P. Slattery*, for appellant.—Where the injury may be the result of one of two or more causes, for only one of which defendant is liable, the burden is on plaintiff to individuate that one as the proximate cause of the damage; otherwise there can be no recovery: Sullivan v. R. R., 272 Pa. 429; Zimmerman v. Weinroth, 272 Pa. 537, 539; Miller v. Director General, 270 Pa. 330; Bruggeman v. York, 254 Pa. 430, 435.

Furthermore, the burden of proof is not met by the testimony of a witness when so conflicting as to render any inference drawn therefrom a mere guess; this is particularly true when the witness admits that his conclusion is a mere scientific guess: Goater v. Klotz, 279 Pa. 392, 396; Zenzil v. R. R., 257 Pa. 473; Mulligan v. Traction Co., 241 Pa. 139; Cawley v. R. R., 44 Pa. Superior Ct. 340; Gausman v. Pearson Co., 284 Pa. 348, 352.

The expert must testify that the result came from the assigned cause: McCrosson v. Transit Co., 283 Pa. 492; Jones v. Coal & Iron Co., 285 Pa. 317; Verbnoff v. Ma-

chine Co., 286 Pa. 199; Morgan v. Coal & Iron Co., 273 Pa. 255; Varner v. Steel Co., 11 Adv. Pa. Superior Ct. Unof'l. 530.

The precise question has not been before our appellate courts in any case we have been able to find. However, a statement in the case of Lente v. Luci, 275 Pa. 217, 219, sustains our position.

*Roger J. Dever,* for appellee.—The findings of fact by the workmen's compensation board supported by competent evidence are binding on the court on appeal: Kuca v. Coal Co., 268 Pa. 163, 165; Roach v. Lever Co., 274 Pa. 139, 143; Watkins v. Coal Co., 278 Pa. 463, 465.

An agreement may be reviewed or modified any time within 500 weeks: Hughes v. Shipbuilding Co., 270 Pa. 27.

It will be noted in this case that the employee did not refuse the service of any physician tendered by the employer and it is only when you refuse the services of a physician tendered by the employer that you forfeit any rights to compensation for increased disability: Parlovich v. C. & I. Co., 76 Pa. Superior Ct. 86.

The medical testimony offered by claimant was sufficiently definite to establish the facts as found by the compensation authorities and affirmed by the court below: Dopkin v. C. & I. Co., 296 Pa. 71; Farran v. Curtis Pub. Co., 276 Pa. 553, 556; Davis v. Davis, Dir. Gen., 80 Pa. Superior Ct. 343.

OPINION BY MR. JUSTICE FRAZER, January 13, 1930:

Claimant, an employee of defendant company in the year 1917, sustained injury by which he lost the sight of his left eye. Under a compensation agreement entered into, with the approval of the compensation board under the Workmen's Compensation Act of 1915, between claimant and his employer, the former was paid compensation for a period of 125 weeks, the full period allowed by section 306c of the act for such permanent

injury. These payments, at a weekly rate of $8.06, ended March 23, 1920. Later claimant returned to work with the same employer and so continued until in 1925, at which time he lost the sight of his right eye, as a result of sympathetic infection developed from the eye first injured. In January, 1926, he filed a petition for review and modification of the original agreement, and asked that he be compensated for total disability. The referee, whose findings in cases of this character are equivalent to the verdict of a jury, after hearing found the sight of the right eye had been destroyed by the infection and entered an award for total disability, which was upheld by the compensation board and subsequently affirmed by the court below, from which judgment this appeal followed.

Appellant contends mainly that the court below erred in affirming the decision and order of the referee and compensation board, (1) because the compensation period is wrongly calculated, and (2) that no compensation should be awarded because claimant refused or neglected to follow the advice of his physician, and for that reason the total disability was the result of his own default. These complaints and the judgment of the court below form the basis of defendant's assignments of error, which we will cover in our determination of the case.

Attention to sections of the Act of 1915, which govern here, will disclose that the referee in making his calculations paid strict regard to the directions and requirements of the law. We are here dealing with an instance of total disability, due to loss of sight in both eyes, as defined in section 306(c) of the Compensation Act of 1915, which says: "Unless the board shall otherwise determine, the loss of......both eyes shall constitute total disability, to be compensated according to the provisions of clause (a)." The board determined in favor of a total disability. The commencement of the paying period, its duration, and the total of compensa-

tion are plainly set forth in clause (a), which provides that compensation shall be paid "For the first 500 weeks after the fourteenth day of total disability"; the compensation not to exceed $10.00 per week nor be less than $5.00 a week, and compensation "shall not exceed in the aggregate the sum of four thousand dollars." It will be seen that this total compensation is limited to a specific maximum, and the period of payment is extended over a duration of 500 weeks. If the total disability is the immediate result of an accident, and the aggregate compensation is justified by the evidence before the referee, no real difficulty can arise in strictly following the plain provisions of the legislation here in question. Payment of compensation, at a fixed weekly rate of disbursement, will begin after fourteen days have elapsed since the date of the accident. It is, however, argued the situation as to compensation becomes different when, as in the present case, a permanent injury is followed by total incapacitation predicated on the result or effects of the permanent injury. Appellant thus states his proposition: There was not a proper calculation of the amount due; $873.93 should have been awarded instead of $2,992.50, the amount found by the referee; the original accident having occurred October 12, 1917, fourteen days thereafter would bring the time to October 26, 1917; 500 weeks from that date would be June 26, 1927, by the calendar year. The date of total disability was fixed at May 23, 1925. From that date to June 26, 1927, the end of the 500 weeks period, would be 108 weeks which at $8.06 a week would amount to approximately $873.93. This, it is contended, is the total amount of compensation due, although appellant did not pay compensation during the weeks intervening between the respective dates given. It claims exemption therefrom because the 500 week period began to run fourteen days after the accident. Such construction would be in plain conflict with the provisions of the act and an absurd perversion of its terms. Section 306 (c)

of the Compensation Act reads: "For *all disability* resulting *from permanent injury*......the *compensation* shall be *exclusively* as follows.:.....for the loss of an eye......125 weeks." This was the compensation first awarded. After it had been paid the injury later developed into "total disability" and payment for that disability under section 306(a) is fixed at 500 weeks. But the two items, 125 weeks for permanent injury and 500 weeks for total disability cannot be added together and thus double the payment for the permanent injury. The total disability is made up in this case of the loss of two eyes and the act plainly says: *"All disability* for the loss of one eye shall be compensated *exclusively* in payment of compensation for 125 weeks." When a permanent injury progresses into total disability, to find the number of weeks for which payment of compensation must be made there must be deducted from the maximum 500 weeks the number of weeks for which payment has been made for permanent injury. In other words, the law directs a reduction from the period of 500 weeks, during which payment of a permanent injury for a disability that was compensated for, as a permanent injury. The referee in the present case found the right eye of claimant became sightless from sympathetic infection from the blind and diseased left eye and that he became totally incapacitated from performing labor on May 23, 1925. The fourteen days following the accident in 1917 had, of course, long before elapsed; but there had been already a payment for all disability resulting from permanent injury at a fixed weekly rate of $8.06, during a period of 125 weeks, the full period allowed by law for such disability due to the loss of one eye. The total amount thus paid claimant was $1,007.50. Taking the sum $8.06, the weekly payment for the partial disability, as the basis for weekly payments for the total incapacitation (it being not more than $10.00 and not less than $5.00), the compensation board found that claimant is entitled to compensation for such disability

from that date for a future period of 500 weeks, less the 125 weeks for which disability had already been paid, aggregating, as stated, $1,007.50. With the 125 weeks deducted, there remained, as the referee finds 371²⁄₇ weeks of payment for total incapacity at the fixed weekly rate of $8.06, or an aggregate amount of $2,992.50 which added to the $1,007.50 already paid, reaches a total of $4,000, the exact limit allowed for total incapacity under section 306(a) of the Act of 1915.

With the plain provisions of the law before us, the correct exemplification of their meaning and purpose as set forth in the present instance, we find no grounds whatever for the contention of appellant that plaintiff's compensation for total disability must begin on or be counted from the fourteenth day after the original injury in 1917. In the first place the Act of 1915 nowhere provides that compensation for injury shall begin "on" any specific day. In fact, in clause (d) of section 306, it is specifically directed that "no compensation shall be allowed for the first fourteen days after disability begins," except as allowed in clause (e) providing that surgical, medical and kindred aid shall be furnished during the first fourteen days. (Section 306 (a) provides compensation "for the first 500 weeks after the fourteenth day of total disability," here found as of May 23, 1925.) We find no direction that disability shall start "on" the fourteenth day; the chief reason for this, in our opinion, is sufficiently plain. An injury may be so slight that during fourteen or more days after the accident, symptoms presaging or establishing the character of the injury may not develop, but a month later such symptoms may become apparent; in such instance, under the contention of appellant, an adjustment by the referee, after hearing the evidence, fixing the beginning of total disability at a date fourteen days after the injury had occurred, and not "on" the fourteenth day after the accident would conflict with the provisions of the act. This in fact would be an absurd construction of

the plain terms of the law. In Bausch v. Fidler, 277 Pa. 573, claimant was paid in full for 175 weeks for a broken arm and leg. He filed a petition to amend the agreement to provide for definite losses, and the compensation was so extended. We said, page 577: "When the status of the two major injuries was definitely determined under the term 'all disability,' the compensation related back to the first payment; what had been previously paid, awaiting the ascertainment of claimant's final status, would be deducted from the award under paragraph (c), leaving due, in this case, payment for 255 weeks at the rate fixed." We deem it unnecessary to continue further consideration of this aspect of the case. The law explicitly directs that compensation shall begin at any proper date after the fourteenth day of total disability, and not "on" the fourteenth day after the occurrence of the accident.

Appellant contends that failure of claimant to follow the recommendation of his attending physician to have the sightless left eye removed to prevent infection to the other eye, created "the equivalent of a refusal or neglect to accept reasonable medical treatment" and the consequent forfeiture of compensation, under section 306(e) of the Act of 1915. The act does not apply to this particular situation. Such forfeiture can follow only, in the words of the act, "if the employee shall refuse reasonable surgical, medical, and hospital services, medicines and supplies, tendered to him by his employer." The record before us does not disclose tenders of that nature by the employer, and the physician who attended claimant was not provided or secured by the employer. The physician whom he consulted, and who testified at the hearing before the referee, recommended the removal of the blind eye; but as the evidence discloses and the referee found it does not appear that claimant was made to understand that failure to remove the eye would result in the loss of sight in the other eye; and the physician, whose testimony was not contradicted, when

asked: "Having the [mental] picture as it presents itself today, is it your best professional judgment that this man's right eye is lost by reason of the injury to the left eye?" replied, "Yes, sir."

In our opinion, the record presents sufficient legal proof to sustain the judgment of the court below in affirming the decision and order of the referee and the compensation board.

The assignments are overruled, and the judgment of the court below is affirmed.