Kilgore *v.* State Workmen's Insurance Fund et al.,
Appellants.

Argued April 13, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*S. H. Torchia,* with him *Charles J. Margiotti,* Attorney General, and *John T. J. Brennan,* for appellants.

*Charles E. Harrington,* for appellee, was not heard.

Opinion by Keller, P. J., July 15, 1937:

Leonard Kilgore, a miner employed by James Coal Mining Company, while in the course of his employment, was badly hurt on September 3, 1929 by the explosion of his employer's powder magazine. A companion, who was with him, was killed and Kilgore was severely burned about the back, buttock, hands, forearms, face, head and neck. Some were third degree burns and some second degree (p. 36a). His eyelashes and eyebrows were burnt off and the burns extended into the ear canals.

A compensation agreement was entered into, under which compensation for total disability at the rate of $15 per week was paid him from September 10, 1929 to March 2, 1930, when his burns were apparently healed and he signed a final receipt. He did not go back to work at the mine on that date, but tried to do some driving in April at Bowersox, but was not able to keep it up and 'played out' after one day (pp. 13a-14a).

On July 4, 1930 he filed a petition to set aside the final receipt alleging that the explosion and resulting burns had caused injuries not only to his hands and face—as set forth in the compensation agreement—but also to his eyes, to such an extent as to amount to the loss of the industrial use and sight of both eyes. No mention of any injury to the eyes was contained in the compensation agreement and there can be no reasonable doubt that if the loss of vision complained of on July 4, 1930 was the result of the accident on September 3, 1929, and was caused by it rather than by some systemic condition, the signing of the final receipt was a mistake of fact, which could be, and should be, corrected and rectified. The effect of the explosion and burns on the eyes was not known, or included in the compensation agreement, when it was entered into, and became apparent only progressively as time passed; and the final receipt based on an agreement relating

to surface burns did not preclude the right to compensation for an injury to the eyes not known or covered when the agreement was made.

A very full and complete hearing was had. It is not necessary to give the full details of the medical testimony; five doctors testified for the claimant, two for the defendant. A brief resume will suffice.

For the claimant it was testified by a physician specializing in the eye that claimant had permanently lost the industrial use of both eyes as a result of the explosion and burns; that the resulting disease of the internal eye, the loss of function of the retinal nerves, was of slow advance, from three to six months, and was progressive; the optic nerve was affected and it would progress, in all probability to continual blindness, slow and gradual blindness.

For the employer there was medical testimony, disputing the permanent loss of the industrial use of the eyes, and denying that whatever loss of vision there was resulted from trauma or external injury. One of these physicians testified that the condition would improve when the claimant got over the hysteria or psychosis under which he was laboring; it was also testified that he was then able to do light work, although he could not resume work as a miner.

An impartial eye specialist called in by the referee testified that in his opinion the claimant had lost the industrial use of his eyes and was progressively going blind, but that it was due to a systemic condition or disease rather than the explosion and burns; but as opposed to this, no systemic disease was discoverable.

Hearings were had on August 12, 1930, August 26, 1930, October 14, 1930, December 9, 1930 and February 5, 1931, and on the last mentioned date, the following entry was made on the record by agreement of the parties: "By counsel for defendant: W. G. Dick, appearing for the State Workmen's Insurance Fund,

and after taking the testimony of Dr. C. H. Henninger, an eminent neurologist, who examined the claimant in conjunction with Dr. Wagner and Dr. Redmond, and who testified in his opinion the claimant is partially disabled, by agreement of parties, it is agreed that the claimant be paid total disability from the date of the last payment of compensation for a period of six months and from that date the agreement be modified to provide for compensation at the rate of twelve dollars per week for partial disability until the disability ceases or changes in extent under the provisions of the Act. No further testimony to be taken. Case concluded."

Pursuant to this agreement of the parties, the referee on February 21, 1931 set aside the final receipt of March 2, 1930 and made an award of compensation in accordance with said agreement. The third finding of fact clearly shows this. It is as follows: *"Third:* This petition was assigned to your Referee July 14, 1930, and numerous hearings have been held both at Kittanning and Pittsburgh in order to determine whether or not the condition of claimant's eyes was lost for all practical and industrial purposes, and further to learn whether or not, if that condition is present, the same is the resultant effect of the injury he sustained. The testimony was far from being harmonious, and after many eye specialists as well as other physicians and surgeons had testified the parties finally agreed that claimant was to be compensated for total disability beginning March 2, 1930, the same to continue for a period of six months, ending September 2, 1930, at which date the agreement was to be modified to provide compensation for partial disability at the rate of $12.00 per week, and the same was to continue until his disability ceases or changes in extent, not to exceed, however, the limitations of the Workmen's Compensation Act of 1915."

While in form an award, it was not based on independent findings of fact of the referee, but was rather an adoption and approval by him of an agreement entered into by the parties, and while final and conclusive up to the date of its entry, February 21, 1931, by its express terms it contemplated changes by way of increase or decrease in the amount of compensation and in the period or duration of the award or agreement, in accordance with the claimant's actual condition as revealed by the test of time. If the condition of his eyes grew worse so that the permanent loss of the industrial use of the eyes was clearly established, (See section 306(c) of the Act), the compensation should be increased from payment for partial disability, $12, to total disability, $15, and the period of the award from 300 weeks to 500 weeks, not exceeding a total of $6,500; on the other hand, if his condition improved, and the disability decreased, the payments should be decreased, accordingly.

There can be no question of the finality and conclusiveness of the award up to February 21, 1931. All parties were represented and agreed to the arrangement, and there was no possible fraud, coercion or mistake about it. It was an agreed settlement to that date, but it had no conclusive force or effect for the future. This was clearly pointed out by our Brother PARKER, in *Evans v. P. & R. C. & I. Co.*, 116 Pa. Superior Ct. 284, 286, 176 A. 791, where he said, speaking for the Court: "The award of 1931......was conclusive as to the condition of the claimant at the time of the...... award but was not conclusive as to what his condition might be at a future date. For a changed condition both parties have a remedy by Section 413 (77 PS 772) if application is made within the limits provided for in that section. In 1931, it was conclusively established that the claimant was then totally disabled, but it could not at that time be known when such disability

would cease. Time demonstrated that in 1933 the injury was confined to the loss of the industrial use of a foot." See also *McGee v. Youghiogheny & Ohio Coal Co.,* 121 Pa. Superior Ct. 85, 93, 182 A. 773.

The rule that an award is final unless appealed from (*Putt v. Laher Ice Cream Co.,* 105 Pa. Superior Ct. 536, 539; 161 A. 622; *Roeschen v. Dietrich,* 107 Pa. Superior Ct. 298, 303, 163 A. 63) is limited in its application to the period included up to the date of the award. The law contemplates changes in awards thereafter corresponding to changes in the condition of disability of the claimant, and the award has no conclusive effect beyond the date of its entry. Of course, the burden is on the one averring a change to prove it.

Following the award of the referee, which was not appealed from, the State Workmen's Insurance Fund paid the claimant $15 a week, for total disability, from March 2, 1930 to September 2, 1930—six months —and for partial disability, $12 a week from September 2, 1930 to June 11, 1935, when the 300-week period for partial disability expired. On August 8, 1935 claimant filed another petition for modification alleging that since the award of the referee, dated February 21, 1931, his disability had become total and permanent and that he had permanently lost the industrial vision of both eyes.

At the hearing which followed there was medical testimony supporting the conclusion that the diagnosis of Dr. Giarth, claimant's eye specialist, had proved correct and that the condition of claimant's eyes had progressively grown worse, until there was no reasonable doubt that he had lost the industrial use of both eyes and that the loss was permanent. The petition averred, "Since the award of the referee dated February 21, 1931 for partial disability the claimant's disability has now become total and permanent, and his disability has increased and recurred to such an extent that

he has now lost permanent industrial vision of both eyes, and claims total disability under the Compensation Act." In opening his case, at the hearing on December 9, 1935, his counsel correctly stated: "This is a proceeding to review the award of referee of February 21, 1931......which at the time was a permanent partial award based upon the fact that the expert witnesses called in the case on both sides were somewhat in doubt as to whether or not the claimant would repair or whether his eyesight might improve depending upon the improvement of his systemic condition at the time. This proceeding now is for the purpose of showing that a sufficient period has elapsed and that claimant's systemic condition has not improved and that his eyesight is now in both eyes below industrial vision beyond any possible recovery." To this, the defendant's representative replied: "We deny claimant's disability since the date of the award has changed from partial to total, or that he is entitled to further compensation." Dr. Krebbs, who had testified at the hearing on February 5, 1931, called as a witness for the claimant, testified: "There was a question [then] as to the permanency of his eye involvement because of the fact that he was then not normal systemically, was not in good health. It was thought that some of the deficiency in sight was due to that fact and [we] were not certain but what with recovery in his general condition that the eyesight would also become better." And again: "In view of the fact that there has been absolutely no improvement since the time I first saw him [October 30, 1930] and since ...... he gives evidence of having had more, rather than less, involvement, my opinion is that his condition is now permanent, that his loss of eyesight is permanent and we cannot expect any improvement in the future." He further gave it as his opinion that claimant's night blindness and his inability to concentrate his vision upon an object had increased since

February 1931, and that his visual field had contracted and was smaller and that his condition was worse than at the last hearing and was beyond any repair; that from October, 1931 the condition must be regarded as permanent. The claimant himself testified that his condition was worse than in February, 1931, and had become so, gradually—that he had more night blindness and more trouble in keeping his vision fixed on an object; and Mr. Dick, who had represented the State Insurance Fund at the prior hearings, testified, in substance, that the medical witnesses could not in February, 1931 agree as to whether claimant's condition was permanent or not permanent, and on account of this confusion in the testimony, the question of permanency was one the doctors did not feel they wanted to decide at that time, and that the referee, *by agreement,* made an award for partial disability, within a few dollars of the maximum claimant would receive for total, and it was understood that this award could be modified or changed as conditions warranted, depending on whether he improved or not. The evidence in the case does not support the board's finding that the claimant's condition was no worse in 1935 than in February, 1931, and that relief could not be had under the second paragraph of section 413, because there had been no increase of disability, and must be granted, if at all, under the first paragraph, on the ground of mistake. Loss of the industrial use of both eyes does not necessarily mean absolute and total blindness; but in some circumstances it may progress to that; in such event, the compensation would not increase but the condition would change for the worse, and might make the permanency of the loss more certain. While we can be sure *now* that the claimant had lost the industrial use of his eyes in February, 1931, there was, at that time, uncertainty as to whether this loss was permanent and whether it was attributable to the accident of September 3, 1929. With the

lapse of time and the progressive effect of the injury to the eyes, the loss of vision is now admitted to be due to the accident and to be permanent and total for industrial purposes; and this brings the case within the second paragraph of section 413 and permits a review and revision of the award from partial disability to total and permanent disability, as provided in sections 306(c) and 306(a) of the Act.[1]

The counsel for the State Workmen's Insurance Fund frankly concede all this, but contend that the claimant is not entitled to any increase of compensation prior to June 11, 1935, when he received his last payment of compensation under the award of February 21, 1931. They admit liability for 200 weeks thereafter at $15 a week but deny liability for the additional $3 a week for the period during which compensation for partial disability at $12 a week was paid. This is based on our decision in *Foster v. Mellon Stuart Co. et al.*, 114 Pa. Superior Ct. 311, 173 A. 773, where we held that payments made and accepted under an *award* are conclusive on both parties up to the date a petition for modification or review is presented. But we have already pointed out that while in form an award, it was actually only the approval of an agreement entered into between the parties; that the findings did not constitute the independent judgment of the referee on the facts, but rather an adoption and approval by him of a conclusion agreed upon by the parties in order to obviate the finding of facts by the referee from conflicting testimony, which might prove unsatisfactory to either or both of them; and by its very terms it contemplated that the compensation should be changed or modified as conditions warranted. Therefore, we are in accord

---

[1] "The loss of both ...... eyes shall constitute total disability to be compensated according to the provisions of clause (a) ...... Permanent loss of the use of ...... an eye shall be considered as the equivalent of the loss of such ...... eye."

with the ruling of the board that the compensation paid following March 2, 1930, was, in substance and reality, paid under an agreement between the parties, evidenced by formal recognition of, and approved by, the referee, rather than under an award in the strict or technical sense of the term. See *Gairt v. Curry Coal Mining Co.,* 272 Pa. 494, 116 A. 382.

The appellant admits that in such case the basic action of the board, as approved by the court below, is in accord with the decisions of the Supreme Court and this court. See *Gairt v. Curry Coal Mining Co.,* supra; *Hudyck v. Wyoming Shovel Works,* 299 Pa. 182, 149 A. 312; *Chase v. Emery Mfg. Co.,* 271 Pa. 265, 113 A. 840; *Hughes v. American Int. Shipbuilding Corp.,* 270 Pa. 27, 112 A. 433; *Miller v. Pittsburgh Coal Co.,* 77 Pa. Superior Ct. 51; *Ancello v. Elk Tanning Co.,* 88 Pa. Superior Ct. 353; *Consona v. Coulborn & Co.,* 104 Pa. Superior Ct. 170, 158 A. 300; *Furman v. Standard Pressed Steel Co.,* 111 Pa. Superior Ct. 44, 169 A. 243; *Miraglia v. Publicker Commercial Alcohol Co.,* 113 Pa. Superior Ct. 487, 174 A. 16; *Horton v. West Penn Power Co.,* 119 Pa. Superior Ct. 465, 180 A. 56; *Kessler v. North Side Packing Co.,* 122 Pa. Superior Ct. 565, 569, 186 A. 404.

Besides, further consideration of the case of *Foster v. Mellon Stuart Co.,* 114 Pa. Superior Ct. 311, 173 A. 773, has led us to the conclusion that the rule therein laid down is somewhat too broadly stated; that, while the judgment in that case was correctly entered, it does not follow that in every case where an employee has received and accepted compensation under an award, he is precluded from receiving additional compensation on a review of the award establishing increase of disability, beyond the date when he applied for a modification of the award. Paragraph two, section 413 of the Workmen's Compensation Act as amended (April 13, 1927, P. L. 186, p. 194-5) which authorizes the board to

modify, reinstate, suspend or terminate an agreement of compensation or an award, upon proof that the disability of an injured employee has increased, decreased, recurred or temporarily or finally ceased, etc., makes no distinction whatever between agreements or awards, and does not discriminate against the latter nor in favor of the former; and it has been the practice, when an agreement of compensation has been modified because of an increase of disability, to make the increase effective from the date that the increase of disability began, as shown by the proofs submitted at the hearing. See cases just above cited. This is in consonance with the express language of the statute: "Such modification ...... shall be made as of the date upon which it is shown that the disability of the injured employee increased;" and this language applies just as well to awards as to agreements of compensation. It does not mean that the modification is to be effective only from the date when proof is produced of the increase of disability, but rather, from the date of the increase of disability, as shown by the proofs produced. And this construction, while it requires great care in the administration of the provision, so as not to do injustice, is nevertheless, on the whole, fairer than the other, for the increase of disability may be gradual and for a while may be deemed merely temporary and not such as to justify action by way of increase, and the injured employee should not be unjustly penalized because he waits to move for a modification until the permanency of the increase of disability is established.

It will be recalled that in the case of *Foster v. Mellon Stuart Co.,* supra, the employee did not ask the award to be modified and increased, except by way of answer to a petition of the employer asking that it be terminated because the disability had ceased; and even then only averred "that he was *then* [that is, at the time of filing the answer] totally disabled." He had been re-

ceiving compensation at the rate of $8.50 per week for partial disability, under an award of the referee, unappealed from, made November 4, 1930. The employer stopped paying under this award after July 10, 1931, claiming that the disability had ceased; the employee, on the other hand, claimed that the disability had not ceased but was *then* total. That was the issue, and this court held that compensation for total disability, which the referee and board found was established, could not go back beyond July 10, 1931; and in the circumstances there present the decision was justified.

But, for reasons above stated, the judgment will have to be modified. The agreement for compensation made at the hearing of February 5, 1931, which was adopted and approved in the form of an award on February 21, 1931, was entered into by all parties concerned without fraud, coercion or mistake of any sort, by way of a settlement of a very real dispute of fact. It is binding and conclusive on all parties up to the date of its entry, February 21, 1931: *Evans v. P. & R. C. & I. Co.,* supra; *McGee v. Youghiogheny & Ohio Coal Co.,* supra; but no longer: Ibid. Accordingly, judgment for the claimant should be modified by awarding him $3 a week from February 21, 1931 to June 11, 1935, the end of the three hundred week period, counting from September 10, 1929, and $15 a week for two hundred weeks thereafter, but so that the total of said amounts plus all payments previously made him shall not exceed $6,500; and the first payment made pursuant thereto to include not only all instalments of compensation due at that time but also interest at the rate of six per cent from the times they were respectively payable—(Section 410 of the Act as amended April 13, 1927, P. L. 186, p. 194). See *Kessler v. North Side Packing Co.,* 122 Pa. Superior Ct. 565, 186 A. 404; *Graham v. Hillman Coal & Coke Co.,* 122 Pa. Superior Ct. 579, 186 A. 400.

As so modified, the judgment is affirmed.