## Parks *v.* Susquehanna Collieries Company, Appellant.

Argued March 2, 1942.

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Henry A. Gordon,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY HIRT, J., July 23, 1942:

Claimant was injured in the course of his employment on July 1, 1931, and by agreement received compensation for total disability until February 23, 1932, when he returned to work. His left eye continued to be inflamed and because of heratitis in that eye he was away from his employment intermittently thereafter for a total of 28 days during the period ending April 30, 1932, for which he also received compensation. On June 23, 1933 the sight of the left eye became so impaired as to amount to loss of vision and, accordingly, a supplemental agreement was entered into, providing compensation for the loss of the use of the left eye for 125 weeks, less the amount of compensation paid on the prior agreements. Notwithstanding the loss of an eye,

claimant worked continuously at his usual occupation, from April 30, 1932 until January 22, 1940 when an examination disclosed that he had lost the sight of the right eye and because of the disability resulting from what, for practical purposes, amounted to total blindness, he became permanently disabled from performing any work. It is conceded that the blindness of both eyes resulted from the injury. Defendant has paid claimant additional compensation for total disability from January 22, 1940 to February 4, 1941. That date is the end of 500 consecutive weeks computed from the seventh day of the initial total disability, immediately following the accident. The question in this appeal is raised by a statement of the above agreed facts in the nature of a case stated. Defendant argues that it has discharged its whole liability under the Compensation Act. Claimant, on the other hand, contends that he is entitled to further compensation for the period of 500 weeks computed from January 22, 1940, the date when he suffered total blindness, less the amount of compensation already paid. The board adopted claimant's view and made an award accordingly. The lower court affirmed.

If we understand defendant's position, it is this: Since the injury resulted immediately, though for a limited time, in total disability, and claimant returned to his employment thereafter, the period during which he may recover compensation for the loss of sight of both eyes ends with 500 consecutive weeks following the seventh day of the initial total disability. If this were the ordinary case of recurring total disability following a period during which claimant returned to his work without impairment of earning power, there might be merit in this view. Cf. *Motte v. Carnegie Coal Co.*, 114 Pa. Superior Ct. 239, 173 A. 670.

But the obvious answer to defendant's contention is that claimant's right to recover is based on a permanent injury within a class made compensable under

§306(c), 77 PS 513. By that section of the act "compensation is payable exclusively as fixed for the specified permanent injury, at a definite number of weeks, irrespective of whether the disability be permanent or partial and without taking into account whether it may have ceased altogether, within the period fixed for payments": *Berskis v. Lehigh Val. Coal Co.*, 273 Pa. 243, 116 A. 888. "In paragraph (c), the right to compensation for the consequential feature 'all disability,' no matter in what degree, is measured by the extent of the injury, i. e., so much money during a given period for the loss of a hand, arm, foot, leg or eye, respectively. In other words, this legislative mandate fixed the amount to be paid in such cases without considering, but including, all incapacity to labor that may be connected therewith, whether such incapacity be total, partial or no incapacity at all": *Lente v. Luci*, 275 Pa. 217, 119 A. 132. The proper approach to the question, therefore, involves a clear recognition of the distinction between an *injury*, permanent in its nature, and *disability* which is total or permanent. The former is compensable for a fixed period as a specific loss regardless of attendant disability; the latter is not. If it were the intention to regard the loss of both eyes, not as a permanent injury, but from the view point of resulting disability to be wholly governed by 306(a), 77 PS 511, there would have been no need for an inclusion of that specific loss in 306(c), for certainly, except in a rare case, total blindness results in total disability and would fall within clause (a). It seems clear therefore, that the loss of both eyes is a permanent injury compensable, under the rule of *Lente v. Luci*, for a fixed period and this conclusion is unaffected by the provision in clause (c) that this loss "shall constitute permanent total disability to be compensated according to the provisions of clause (a)." The reference in 306(c) to clause (a) does not change the specific character of the loss but only fixes the period during which compensa-

tion shall be paid and measures the amount of it. It does not reclassify the claim from one based on permanent injury to that of ordinary total disability. The right to recover, therefore, does not relate back to the date of the initial total disability immediately following the accident nor does the designated method of payment fix the termination of the compensable period at 500 weeks from the seventh day of the initial disability.

That question, as to this appeal, is ruled by *Hudyck v. Wyoming S. Works*, 299 Pa. 182, 149 A. 312. The claimant, there, lost the sight of one eye from accident and received compensation for the permanent injury. About seven and one-half years later he lost the sight of the other eye, from the same cause in proximate sequence, and petitioned for a review of the original agreement claiming the compensation provided by 306(c), as measured by 306(a). The defendant there, as here, contended that it was liable for compensation only for the number of weeks between the time when total disability first began and the end of the period of 500 weeks, computed from the fourteenth day (Act of 1915) following the accident. In refusing to adopt that view the Supreme Court said in part: "With the plain provisions of the law before us, the correct exemplification of their meaning and purpose as set forth in the present instance, we find no grounds whatever for the contention of appellant that plaintiff's compensation for total disability must begin on or be counted from the fourteenth day after the original injury in 1917. In the first place the Act of 1915 nowhere provides that compensation for injury shall begin 'on' any specific day ...... The law explicitly directs that compensation shall begin at any proper date after the fourteenth day of total disability, and not 'on' the fourteenth day after the occurrence of the accident." In that case, though the accident resulting in the loss of the left eye occurred on October 12, 1917, judgment on an award as for total disability was affirmed, follow-

ing the loss of the right eye on May 23, 1925, beginning with the latter date and continuing for 500 weeks thereafter, less the amount of compensation previously paid for the loss of the left eye. Identical language in all of the subsequent amendments to the act must receive the same construction.

The facts in the instant case are almost identical with those in the Hudyck case, supra. Here, the initial total disability resolved itself into the loss of the left eye and, in a sense merged in that specific loss, for in computing compensation for 125 weeks for the loss of the eye, defendant received credit for the payments theretofore made. But in our opinion the present claimant's right to recover for the full period of 500 additional weeks, does not depend upon that fact. One may recover for a specific loss under 306(c) regardless of the nature of former agreements, or awards, subject only to a reduction by the total amount of the compensation theretofore received.

This proceeding, brought approximately 446 weeks after the accident, was in time. And it is of no moment that claimant previously had signed one or more final receipts. When the proceeding is to reinstate or modify a compensation agreement, under the second paragraph of §413, the inquiry goes directly to the question whether disability of the injured employee has increased. A final receipt then ceases to have any significance and it is not necessary for claimant first to move to have it set aside for cause under §434. "The second paragraph relates not only to existing compensation agreements but also to those which have been terminated, [by final receipt or otherwise] and gives the board or referee power to modify, *reinstate,* suspend or terminate a compensation agreement, original or supplemental, or an *award* on petition filed by either party, and upon proof, that the disability of an injured employee has increased ......": *Zupicick v. P. & R. C. & I. Co.,* 108 Pa. Superior Ct. 165, 164 A. 731. Under the facts

here presented, as ruled by the Zupicick case, supra, claimant might have made an application under the second paragraph of §413 at any time, but only, within 500 weeks from the accident. As there indicated, the expression "at any time" in that section of the act does not "allow an employee who claims for eye injuries, a period absolutely without limit, in which to ask for a review." An employer in fact may not be unduly prejudiced by having to set up reserves to meet possible compensation for blindness developing at a distant date, but there must come a time when he can be certain that this contingent liability has ceased.

The amendment of April 13, 1927, P. L. 186, 77 PS 772, which imposed a time limitation on the right of review, specifically excepted eye injuries. This exception, contained also in the subsequent amendments, recognizes that blindness may develop from the progressive effects of an original injury long after the initial disability, and it was the intention of the legislature to provide compensation for that loss whenever it should occur, within the general limitations of the compensation act. An agreement, potentially, may involve payments for total disability for 500 weeks. If for any good cause the employer is relieved from the payment of compensation within that period, that is to his advantage but only, in the case of eye injuries if the period of 500 weeks expires before total blindess occurs. On the other hand a new liability is imposed upon the employer if the claimant loses the sight of both eyes within that period. By the amendment the employer is given notice of contingent liability from that cause. Our conclusion is that, where a claimant loses his sight as a result of an injury, he is entitled to have the original agreement or award reinstated and modified to provide compensation for the specific loss, at any time within 500 weeks from the first disability, regardless of whether that agreement or award related to a specific loss, as in the Hudyck case, or provided com-

pensation for either total or partial disability. This rule would make for uniformity among all cases of equal merit; it would deal with all reasonable liberality with a claimant, and would not place an undue burden upon the employer.

Judgment affirmed.