Smith *v.* Union Collieries Company, Appellant.

Argued May 1, 1944. Before KELLER, P. J., BALDRIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*Edw. J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Samuel Krimsly,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1944:

The claimant in this workmen's compensation case sustained an accidental injury on September 22, 1941, while employed as a motorman in defendant's mine.

An open compensation agreement was entered into, which described the injury as a "compound fracture of great toe and toe next to it, right foot." A final receipt, which does not appear of record, was apparently signed May 31, 1942 and the referee so found. On September 30, 1942, the claimant filed a petition alleging that when he returned to work June 8, 1942, "the condition of the foot became aggravated, causing discharge of pus from the great toe" and that his earning power has been less since the accident. The defendant filed an answer denying claimant's averments and alleged that he filed a final receipt, returned to work, and thereafter has been working regularly.

According to the claimant's testimony he was in the hospital for eight or nine weeks following the accident and returned for a further period of ten days when the second toe of the right foot was amputated. Prior to his injury claimant's average wage was $35.76 per week and thereafter it amounted to $29.88 until November 1, 1942, when he left defendant's employ, and his weekly wage at the time of the hearing was $26.40. His great toe sticks straight up so that he has to wear a special soft shoe and suffers pain and discomfort if he stands on his foot for one to three hours. While his foot was in better shape at the time of the hearing "it breaks and runs every once in a while—that is, the great toe." After the accident he tried to work at the bottom of the hoisting shaft, but he found that required too much activity on his feet and and his right foot was sensitive to the cold temperature. He obtained a new job with another employer checking oil, which does not require him to be on his feet, but he continues to suffer discomfort and pain from his foot.

Dr. Harry Epstein was called by the claimant and testified that he examined him on November 4, 1942. "Examination revealed that he walks with a slight right limp and there is a deformity consisting of inversion

of the big toe against the third toe—the toe next to the big toe has been amputated. The big toe is short and just back of the nail there is an encrusted area which is the site where a sinus developed. The big toe feels cold to the examining finger as compared to the other toes and he is unable to fully flex the big toe against the floor,—in other words it stands straight up. There is also tenderness on pressure over this toe. X-rays reveal complete amputation of the second toe, that is, the one next to the big toe, with an old fracture of the proximal phalanx of the big toe and here a considerable portion of the bone of the dorsal end of this phalanx is missing and this is responsible for the deformity which I have described." The doctor testified further that in his professional opinion the condition of the right foot was due to this accident; that the claimant has to wear constantly a band-aid to relieve the irritation due to the nail of the large toe rubbing against the third toe.

It is true that the claimant said that when he signed the final receipt the toe was still "running" but the doctor gave him a certificate that he was able to return to work so it may be assumed that the running was not of a very serious nature. It appears in both the testimony of the claimant and Dr. Epstein that the sinus in the encrusted area back of the big toe breaks and pus discharges from the base of the nail.

The referee found in his 4th finding that the claimant's condition was as described by Dr. Epstein and that the claimant suffers a 20% partial disability at the present time and ordered the original compensation agreement to be reinstated and modified so that the compensation be paid the claimant in the sum of $3.92 per week from June 1, 1942 to October 31, 1942 and in the sum of $6.24 per week thereafter, to continue so long as claimant's disability remains unchanged. The findings of fact, conclusions of law of the referee were sus-

tained by the board, and its action was upheld by the court below.

If the claimant on May 31, 1942, when the final receipt was signed, suffered from a disability he should not have been asked to execute such a paper. If the giving of the final receipt was proper then disability undoubtedly recurred, or was aggravated subsequently. Concededly this is not a proceeding to set aside a final receipt under section 434 of the Workmen's Compensation Act, 77 PS §1001, but to reinstate the original agreement for disability that has increased or recurred and that is what the referee in effect found. The petition, therefore, should be considered as coming under the second paragraph of section 413 of the Workmen's Compensation Act, 77 PS §774. That being the case "a final receipt then ceases to have any significance and it is not necessary for claimant first to move to have it set aside for cause under §434." *Parks v. Susquehanna Collieries Co.*, 149 Pa. Superior Ct. 535, 540, 27 A. 2d 481. In *Huerbin v. D. L. Clark & Co. et al.*, 140 Pa. Superior Ct. 406, 408, 409, 14 A. 2d 175, we said: "Where an injured person, thinking he has fully recovered, makes a settlement with and releases the employer, it is proper, on development of future disability, to reopen the case and award compensation pursuant to the second paragraph of §413 of the Workmen's Compensation Law if the facts warrant it (*Dewees v. Day & Zimmerman*, 291 Pa. 379, 140 A. 345) provided a petition is filed within the limitations fixed in that section (77 PS §772)." The question before us is: Do the facts warrant the action of the court? It was [convincingly] proved by uncontradicted evidence that the claimant has a disability and there is no conflict in the testimony that after he returned to work the pus broke and runs from his great toe. A careful review of the evidence adduced convinces us that it was sufficient to sustain the finding of the compensation

authorities and met the standard of proof required in a case of this character.

The appellant places considerable reliance on *Eberst v. Sears Roebuck & Company*, 334 Pa. 505, 6 A. 2d 577, which was an eye case, so that there was no time limitation fixed. There was an attempt to set aside a final receipt more than three years after its execution on the ground of fraud. In that case the claimant's medical testimony was contradicted by other doctors including an impartial specialist. Three hearings were had and the compensation authorities expressed disbelief in the employe's claim. In such circumstances the Supreme Court held that the claimant did not produce such precise and credible evidence as to warrant the overthrow of a final receipt. The situation before us is entirely different. The petition in this case was presented within the period of one year after the last payment of compensation and there is no conflict in the evidence. In our judgment the claimant met the burden of proof that was on him to establish his right to relief.

The judgment is affirmed.