Melody, Appellant, v. Bornot, Inc. et al.

**176**

Argued October 9, 1933.

Before KELLER, CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*George E. Beechwood,* for appellant.

*Wayland H. Elsbree* of *White, Schnader, Maris & Clapp,* for appellees.

OPINION BY CUNNINGHAM, J., February 1, 1934:

Katherine Melody, the claimant in this compensation case, has appealed from the action of the court below in sustaining the exceptions of her employer, Bornot, Inc., and its insurance carrier, Pennsylvania Manufacturers' Association Casualty Insurance Company, to an order of the board granting her petition for the reinstatement of her compensation agreement as of October 1, 1928, and directing the making of payments thereunder for total disability from that date.

The court below reversed the decision of the board and directed it to dismiss claimant's petition.

The errors assigned in support of this appeal relate to the sustaining by the court below of the exceptions of the employer and its insurance carrier (both herein referred to indiscriminately as employer or as defendant) to the action of the compensation authorities, and to the entering of what is in effect a judgment that the employer is not liable for the payment of any compensation in addition to the amounts already paid under the agreement.

The legislation chiefly involved is Section 413 of the Act of June 26, 1919, P. L. 642, (Amending the Workmen's Compensation Law of June 2, 1915, P. L. 736) as amended by the Act of April 13, 1927, P. L. 186, 194.

The decision of the court below is supported by an able and comprehensive opinion by GORDON, JR., J., and, although we do not agree with the suggestion therein relative to the applicability, under certain circumstances, of the first paragraph of Section 413 to the agreement here involved, we are satisfied the conclusion reached is entirely correct.

A review of the record will disclose that claimant's contest for additional compensation was legally and finally determined against her and in favor of her employer on September 29, 1931, and that the order of reinstatement from which it appealed to the court below resulted from an unwarranted attempt by the board, as now constituted, to reverse not only the action of its predecessors but also the judgment of the Court of Common Pleas No. 1 of Philadelphia County.

While in the course of her employment as a dressmaker, on February 7, 1928, claimant, forty-six years of age, suffered an accidental injury to the lower portion of her back. She had risen from her chair while working on a dress and, after standing for some minutes, attempted to resume her seat, assuming her chair

had remained in position; by reason of its inadvertent removal claimant fell to the floor.

Under date of February 23, 1928, the parties entered into an open agreement, approved by the board and providing for payment of compensation for total disability at the rate of $9.10 per week, from February 14, 1928.

The description of the accident and resulting injury set out in the agreement reads: "Chair tilted as she went to sit down; apparently hurting her spine."

Payments were made under the agreement until October 1, 1928. A controversy then arose over the liability of the employer to make any further payments.

It will be conducive to clearness to make a chronological statement of the proceedings from this point forward, with such comments upon their legal effect as may be necessary.

Under date of October 22, 1928, the employer presented its petition for termination of the agreement to the board, setting forth therein that claimant was able to return to work by October 3, 1928, but refused to sign a final receipt. Claimant answered she was not able to return to work but still suffered severe pain in her back, from the injury to her spine, which disabled her from performing any labor.

The matter was referred to Referee Lutz who, from the testimony of claimant and that of the medical experts called at a hearing before him, concluded claimant was not totally disabled but was unable to do any work requiring stooping or lifting and made the following order: "In view of the above facts the prayer of the petitioner to terminate compensation agreement No. 2,285,713, is hereby granted and the agreement is terminated as of October 1, 1928, the date to which compensation has been paid, reserving to claimant the right to ask for modification of her agreement and

giving her an opportunity to show her loss in earnings."

This was a termination, or at least a suspension (Gairt v. Curry Coal Mining Co. et al., 272 Pa. 494, 497, 116 A. 382) of the agreement, subject to the right of claimant to petition for its reinstatement and modification to provide for compensation for such partial disability as she might be able to show she was suffering.

On June 25, 1929, within one year from the last payment of compensation under the agreement, claimant presented her petition averring that she was then able to do light work and was earning thereby the sum of $2.50 per week, but was still undergoing medical treatment and was unable, by reason of her physical condition, to engage in any other than her present employment.

This petition was properly presented under the second paragraph of section 413, and, along with defendant's answer denying claimant had any remaining disability, was referred by the board to Referee Mattmann, who, on February 13, 1930, conducted a hearing on the issue thus raised. At this hearing claimant testified she had worked only two weeks and the medical testimony with respect to her physical condition was conflicting. The controlling finding of the referee reads:

"From all the evidence produced, the referee finds as a fact that at the time of the accident which is the subject of the agreement in this case the only injury which the claimant sustained was to the coccyx, and any disability that she suffered from as a result of that accident was confined to that particular area. Further, that the disability of which the claimant now complains is located in the upper and middle part of the back, and, from the medical testimony, particularly that of Dr. Weisenburg, this condition is not now, and

never was, associated or related in any way to the accident.

"Therefore, the prayer of the petition is refused; and the said petition for modification is dismissed."

From this final order, entered March 14, 1930, claimant appealed to the board and on August 11, 1930, the findings of fact and order of the referee were affirmed and her appeal dismissed. Thereupon claimant appealed to the Court of Common Pleas No. 1 of Philadelphia County to No. 15,549 of June Term, 1930. On September 13, 1930, while this appeal was pending and before final action had been taken thereon, claimant filed with the board a petition, apparently under section 426, for a hearing de novo. After answer by the employer denying the averments of the petition, the board, on October 3, 1930, refused a hearing de novo and claimant also appealed from this action to the same court of common pleas to No. 7,011, September Term, 1930.

Under date of March 6, 1931, the court entered its order reading: "Claimant's appeal from the decision of the Workmen's Compensation Board is dismissed and claimant's petition for a hearing de novo is likewise dismissed." In its memorandum opinion the court reviewed all the testimony in detail and referred to the conflicting opinions expressed by the medical witnesses, adding, "We are not concerned what our conclusion might be under the evidence, if there is evidence to sustain the board's conclusion, and we feel that there is sufficient evidence, if believed, to justify the action of the board."

From this decision of the common pleas claimant appealed to this court on April 6, 1931, to No. 202, October Term, 1931, but her counsel withdrew and discontinued the appeal on September 29, 1931.

That voluntary action (taken more than two years after the last payment of compensation and more than one year after the termination by the board of the

agreement) operated, under the principles of law declared by this court in Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731, and Bucher v. Kapp Brothers et al., 110 Pa. Superior Ct. 65, 167 A. 652 (in each of which cases an allocatur was refused by the Supreme Court), as a final disposition of the controversy between the parties. In the Zupicick case we held that the first paragraph of section 413 relates only to the review and modification, or review and setting aside, of an existing original or supplemental compensation agreement, upon the grounds that it was founded on a mistake of law or fact, existing at the time the agreement sought to be reviewed was made, or had been procured by fraud, coercion, or other improper conduct of a party, and that the phrase "at any time," as used therein, means at any time during the contemplated period the agreement has to run, i. e., five hundred weeks for total disability and three hundred for partial.

The effect of the discontinuance was to eliminate the first paragraph of section 413 from consideration in any attempted subsequent proceedings in the case; that paragraph applies only to agreements in existence —no matter whether its provisions are sought to be invoked by a petition filed with the board by one of the parties or a question thereunder arises "in the course of the proceedings under any petition pending" before the board or, a referee. "Reinstatement" of an agreement—the action subsequently undertaken here—is not mentioned in, or contemplated by, this paragraph: Bucher v. Kapp Bros. et al., supra.

In the Zupicick case we also held that agreements which have been terminated, or suspended, are taken care of by the second paragraph of section 413 and by section 434, relating to the setting aside of final receipts.

With respect to the second paragraph of section 413,

we said that it "relates not only to existing compensation agreements but also to those which have been terminated, and gives the board or referee power to modify, reinstate, suspend or terminate a compensation agreement, original or supplemental, or an award, on petition filed by either party, and upon proof, that the disability of an injured employee has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. This paragraph covers changes that have occurred in the claimant's physical condition since the agreement was entered into or terminated. The first paragraph does not. This second paragraph was affected by the amendment of 1927,—except as to eye injuries—by fixing a time limit within which the review, modification and reinstatement could be applied for, viz., as to agreements or awards under section 306 (c), which were for a definite period, during the time the agreement or award was to run; as to all other agreements or awards—except eye injuries—within one year after the date of the last payment of compensation."

Obviously, the petition of the employer, in the case at bar, for termination of the agreement and the petition of claimant on June 25, 1929, for the modification thereof into an agreement for partial disability, were filed under the second paragraph of section 413, and were based upon alleged changes in claimant's physical condition subsequent to the date of the agreement. It is only proper to say that the opinions cited had not been handed down at the time the subsequent proceedings, to which we are about to refer, were instituted.

On August 5, 1931, claimant filed with the board three petitions: (a) To reconsider her former petition for a hearing de novo; (b) To reinstate the agreement terminated as of October 1, 1928, on the ground of a recurrence of total disability, evidenced by

"severe pains and numbness throughout the entire back, but especially in the region of the coccyx and in the sacro-iliac region and the lower part of the back;" and (c) To modify the agreement accordingly. The board, as then constituted, (after answers by the employer citing the appeals to the common pleas and to this court and contending, that the board was without jurisdiction to grant the petitions) dismissed petition (a) but took no action upon petitions (b) and (c).

By December 21, 1931, the personnel of the board had changed and the new board, in an opinion filed January 11, 1932, by its chairman, reviewed the history of the case down to that date, dismissed petitions (b) and (c) upon the ground that the matters therein referred to were res judicata, and authorized claimant "to file a petition to review [the] agreement in order that the injuries sustained by the claimant on February 7, 1928, can be properly and accurately ascertained."

As the only action taken on any of the three petitions, filed August 5, 1931, was to dismiss them, the extended argument of counsel for claimant that, under all the circumstances of this case, they should be considered as having been filed within the limitation attached to paragraph two of section 413 because they were filed within one year after the final order of the board of August 11, 1930, (dismissing claimant's appeal from the order of the referee of March 14, 1930, refusing to modify), is beside the point here involved. Claimant took no appeal from the orders dismissing her petitions, but accepted the invitation of the board to file a new petition which became the basis of the action now under review.

It is perfectly clear from the opinion of Chairman Dale that the new petition was to be filed under the first paragraph of section 413 for a review and reinstatement of the agreement upon the grounds of mistake of fact and law and fraud.

In the course of the opinion he stated that he found "not only a patent ambiguity in [the] agreement, but an apparent neglect on the part of the referee who first entertained the case to find the substantive facts necessary to support a petition based upon a change of disability, and the failure of the second referee to admit such competent evidence as would fairly establish them," and added, "not only are the parties at fault, but there has been a clear neglect of duty on the part of those charged with the administration of the Workmen's Compensation Law." The opinion then proceeds to say that if necessary to afford the claimant an opportunity of establishing a right to compensation the board "would set aside and disregard every statute of limitation that appears in the Workmen's Compensation Act (Horn v. Lehigh Valley R. R. Co., 274 Pa. 42, 117 A. 409) for the reason that we are compelled to find an unintentional neglect of duty on the part of the referee'" etc. It may be noted in passing that the case cited relates entirely to the filing of an original claim petition (which had been mailed) and has no application whatever to the issues here involved. Another statement in the opinion is that "such an agreement and such a failure amounts to a patent and constructive fraud," and, in referring to the findings of the former referees and board, the chairman said, "we think it unfortunate that these findings were affirmed by [the] board . . . . . and by the Court of Common pleas of Philadelphia County." These expressions were ill-advised and unwarranted.

Up to this point in the litigation of this claim—covering a period of more than three years—no suggestion of mistake or fraud had ever been made by claimant or her counsel.

On January 14, 1932, claimant filed a petition averring that the agreement was based upon a mistake and procured by fraud, "to wit: it fails to state the true facts, nature and/or extent of my injuries sustained

as a result of the accident," and the referees failed to correct the agreement "and excluded certain testimony because of certain mistakes and entered findings of fact predicated upon facts as true which were untrue." This petition was referred to Referee Eaches to specially preside at the hearing on March 3, 1932. Counsel for the employer objected to the taking of any additional testimony, but their objection was overruled and one of the results of the hearing was a finding by the referee that the agreement "was founded upon a mistake of fact; also, that [the] agreement was terminated as of October 1, 1928, under a mistake of fact." The order entered by the referee, and subsequently affirmed by the board on July 5, 1932, was to the effect, that the agreement be amended by including, inter alia, in the description of the "resulting injury" that claimant "injured her coccyx bone; also injured the muscles and soft structures in the lower part of the sacrum; injured the transverse process of the fifth lumbar vertebra on the left side, and injured her sacro-iliac joints;" that the agreement, as amended, be declared to be in full force and effect as of October 1, 1928; and that payments of compensation for total disability be resumed as of that date and continue until the disability of the claimant shall change in effect, etc.

From this order the employer appealed to the Court of Common Pleas No. 2 of Philadelphia County at No. 6879, June Term, 1932.

It is apparent that the proceedings, subsequent to the discontinuance of the appeal to this court in 1931, were merely an attempt to switch the case from the second paragraph of section 413, under which it belonged and under which it had been finally adjudicated, to the first paragraph of the section. As the agreement had been finally terminated by the order of the board of August 11, 1930, which order was affirmed by the common pleas and the appeal from its decision dis-

continued, the action of the present board in authorizing the presentation of the petition to review, etc., was, under the authorities we have cited, wholly unauthorized by law and it had no jurisdiction to make the order of July 5, 1932, amending the agreement and reinstating it as of October 1, 1928.

It was the clear duty of the court below to reverse the action of the board in thus endeavoring to open and readjudicate a closed dispute because it had conceived, the idea that the agreement had been procured by some obscure fraud or was founded upon some kind of a mistake and because it did not agree with the inferences of fact drawn by its predecessors from conflicting medical testimony. Even if the board had been vested with any power or jurisdiction to entertain the petition and make the order in question, the inferences of fraud or mistake, which might justify action by it, would necessarily have to be based upon something transpiring between the parties and could not be predicated upon decisions of the previous board, which, in the language of the court below, "had ripened into an adjudication of the facts in controversy."

We approve the following excerpt from the opinion below: "Indeed, the very adjudication affirmed by the court of common pleas in this case—that the claimant suffered an injury to the coccyx only and not to the back, and that she had completely recovered from the former injury—entirely negatives any claim of fraud, or mistake in connection with the compensation agreement itself, and conclusively establishes that the agreement was not so tainted. The record shows that again and again the claimant was given full opportunity, in the earlier phases of this case, to prove her contention as to the nature and extent of her injuries. There was [competent] evidence to support the decision of the board and of the common pleas, and their conclusion is final upon the subject."

If any errors were committed in the admission or rejection of evidence, claimant, by discontinuing her appeal to this court, waived her right to have the rulings of the referees and board reviewed.

Or if, as now suggested by her counsel, there was any doubt with respect to the finality or form of the order of common pleas No. 1, that question could also have been reviewed.

There is no merit in claimant's contention that the court below substituted its own findings of fact for those of the referee and board; the reversal of the action of the board was clearly upon questions of law.

Claimant has had her day in court, and we permitted her to present this appeal in forma pauperis. Upon a careful review of the entire record, we are of opinion that all her assignments of error to the decision of the court below, filed April 13, 1933, must be overruled.

Order affirmed.