Shay *v.* North Side Bank and Trust Company,
Appellant, et al., No. 1.

Argued April 25, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Harvey B. Lutz,* with him *C. V. Henry, Jr.,* for appellant.

*Eugene D. Siegrist,* with him *W. H. Dunbar, 3d,* for appellee.

Opinion by Cunningham, J., June 27, 1938:

This appeal and its companion, at No. 7, October Term, 1938, of this court, are the latest of a series of unwarranted maneuvers by which an employer and its insurance carrier have succeeded up to the present time in delaying payment to an injured employee of $1,572,

judicially and finally adjudicated a year and a half ago
to be then due him as compensation for injuries acci-
dentally suffered in the latter part of 1933. There is
not the slightest merit in either appeal. In the language
of the court below: "This claimant [now eighty-eight
years of age] has been bandied about from pillar to
post by proceedings which have delayed the payment"
of even the amount of compensation now admitted by
appellants to be due him.

Motions to quash both appeals were made by counsel
for the claimant-appellee for failure to comply with
certain rules of this court in printing the record. As
these motions were based upon purely technical grounds
we directed that they be heard along with the argument
upon the merits and they are now overruled. A chrono-
logical review of the record will clarify the issues
involved.

For sixteen years prior to November 14, 1933, the
appellee had been employed by the appellant bank as a
janitor. On the morning of that day, while firing a
furnace in the bank building, he was suddenly overcome
and rendered unconscious by the inhalation of coal gas.
His description of the accident reads: "A. I went to
work and wanted to fill the hopper up with coal.
Q. Then what happened? A. Then I was throwing about
half of it in, and it sprung a leak in the grate. Q. What
sprung a leak? A. A hole in the grate, and it throwed
sulphur out in the room." When discovered by a fellow
workman, appellee was removed to a hospital and after
being revived was taken to his home. His testimony
relative to the existence and extent of the disability
caused by the accident reads: "Q. Can you work now?
A. No, I can't hardly work, just through that poison
going in. Q. You could do your work well before this
happened? A. They were always satisfied. Q. Could you
get along—get around pretty sprightly? A. Sure.
Q. Did you use a cane before this happened? A. No.

Q. Do you use a cane now? A. Yes. Q. Could you do that work now? A. No. I had went down and tried it. Mr. Oberholtzer [one of the bank's officers] said he wants to see me, and then he said he has to lay me off. Q. Can you do any work any more? A. I don't think I could. I couldn't stand it in my limbs, you know." The bank employed another janitor, and appellee has had no employment since the date of the accident.

On May 4, 1934, he filed his claim-petition for compensation for total disability. A joint denial of any liability was made by the employer and its insurance carrier, Aetna Life Insurance Company, appellant in the appeal at No. 7 October Term, 1938. The insurance carrier formally asked to be made a party defendant on the record and its request was granted by the referee to whom the claim had been referred. At the hearing before him on October 29, 1934, no separate appearance was entered in behalf of the employer but counsel for the insurance carrier entered a general appearance and participated in the proceedings. It is not necessary for present purposes to review the lay and medical testimony before the referee. The circumstances of the accident and the fact that appellee had not worked since its occurrence were not questioned.

The sole controversy related to the question of how much, if any, of appellee's disability was attributable to the accident as distinguished from the natural disabilities incident to his age—then eighty-four. The referee reached the conclusion that the disability caused by the accident had not lasted longer than "the seven day waiting period provided in the act," and that the disability from which appellee was suffering at the time of the hearing was "due to conditions resulting from his advanced age." A disallowance of any compensation was accordingly entered upon the record.

Upon appellee's appeal to the board these findings were, on January 22, 1936, set aside and the board sub-

stituted its own finding to the effect that appellee had "shown by competent and convincing testimony that his present disability is the result of the injury sustained in the accident." An open award was accordingly made against appellants directing them to pay appellee "compensation at the rate of 65% of $13.85 [employee's weekly wages], or $9 per week, payable semi-monthly beginning from November 21, 1933, [the seventh day after the accident], with interest thereon at the rate of six per centum per annum on each of the deferred payments from the date when each of them respectively should have been made, beginning with interest on the first payment from December 5, 1933."

It may be well to note at this point that one of the quibbles, raised by the insurance carrier a year and a half after the award had been made, was that it "established only the fact that compensation was due and payable from November 21, 1933, but it did not establish the extent or period of time for which such compensation was payable." It was an open award, and although it did not contain the usual phraseology that compensation should "continue within the limitations of the statute," no interpretation, other than that compensation for total disability should continue for the potential period of five hundred weeks unless modified or terminated in the manner provided by the statute, is possible.

From this award by the board the insurance carrier appealed, on February 11, 1936, to the court below, at No. 310 March Term, 1936, of that court. In none of the exceptions upon which the appeal was based is any reference made to the form of the award; the sole ground of the appeal was that the findings of the board were not supported by any competent evidence.

In an opinion filed December 15, 1936, by the learned President Judge of the court below, HENRY, the exceptions were dismissed and judgment entered upon

the award in the sum of $4,632 with costs. The material portions of the judgment read:

"The above judgment is made up as follows, namely:

| | |
|---|---:|
| Weekly instalments from Nov. 21, 1933 to Dec. 15, 1936, 160 weeks at $9 a week .... | $ 1,440.00 |
| Interest on said instalments from the time when they were due and payable to Dec. 15, 1936 ................................ | 132.00 |
| or a total of ............................ | 1,572.00 |
| For future payments at $9 per week for 340 weeks, or the sum of ............... | 3,060.00 |

with the right of execution for defaulted payments, but with stay of execution as to payments unmatured. The amount of the judgment to be subject to any future legal determination as to diminution or cessation of the amount of the order."

The judgment was entered in substantial accordance with the principles announced by this court in *Graham v. Hillman Coal & Coke Co.,* 122 Pa. Superior Ct. 579, 186 A. 400, and *Kessler v. North Side Packing Co. et al.,* 122 Pa. Superior Ct. 565, 186 A. 404. It protected appellants from execution for any unmatured instalments, and afforded them full opportunity for appropriate action in the event of any change, subsequent to its entry, in the physical condition of appellee.

On January 7, 1937, the insurance carrier appealed from the judgment of the common pleas to this court at No. 45 October Term, 1937, but, on April 10, 1937, *voluntarily discontinued* its appeal. Under all the authorities, including *Melody v. Bornot, Inc. et al.,* 112 Pa. Superior Ct. 174, 170 A. 408, the effect of the discontinuance was a final adjudication that the employer and its insurance carrier were indebted to the appellee, as of December 15, 1936, in the liquidated sum of $1,572, for compensation payments which had accrued

up to that date, and will be liable for subsequent instalments, with interest, as they mature for a possible additional period of three hundred and forty weeks, unless the death of the appellee should occur, or the award be modified, suspended or terminated, in the manner contemplated by the statute, within that remaining period.

Referring particularly to the liquidated sum of $1,572, there can be no question that the insurance carrier, by the discontinuance of its appeal, made itself directly, absolutely and unconditionally, *liable to appellee* for the payment forthwith of the liquidated portion of the judgment, and for the payment of future instalments as they accrued. At its own instance, the insurance company became a party to the litigation at its very inception, assumed the defense of the claim, and took the appeals to the court below and to this court. Under the circumstances here present, it has been in court all the time by its voluntary act and is as fully and directly bound by the judgment as is its insured: *Chase v. Emery Mfg. Co.*, 271 Pa. 265, 113 A. 840, and *Wells v. Frutchey et al.*, 274 Pa. 305, 117 A. 911.

By the express provisions of "The Insurance Company Law of 1921," P. L. 682, approved May 17th, Article VI, Section 651, P. L. 762, 40 PS § 811, it is provided: "Every policy of insurance against liability under 'The Workmen's Compensation Act of nineteen hundred and fifteen,' and acts amendatory thereof, shall contain the agreement of the insurer to pay all compensation and provide all medical, surgical and hospital attendance for which the insured employer may become liable under the act during the term of such insurance ......" It is further enacted: "Such agreements shall be construed to be a *direct promise to the injured employee* ...... having a claim under the act, and shall be enforceable by action brought in

the name of such injured employee ......" (Italics supplied)

As soon as the record was remitted to the court below after the discontinuance of the appeal, appellee had a clear right, under the amendatory act of June 26, 1919, P. L. 642, 668, amending our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS § 951, to issue execution for the liquidated amount of the judgment against either the employer, or the insurance carrier, or both.

At this point in the history of the case, the insurance carrier, instead of making prompt payment to the appellee of all compensation instalments then accrued, adopted a course of procedure for which no warrant can be found in the statute. On June 2, 1937, it filed with the board a paper entitled "Petition for Termination of Award." The prayer of this petition was that the board terminate as of *June 26, 1934,* the award made by it on January 22, 1936. The ground for termination was thus set forth in the petition: "And as ground for the petition allege that the disability of Allison Shay entitled to compensation under the said award has terminated on June 26, 1934,—all disability resulting from his accidental injury of November 14, 1933, having ceased at that time." The petition contained the further allegation that any disability appellee may have suffered after June 26, 1934, was not the result of the accident but from natural causes. No formal disposition seems to have been made by the board of this petition. As the board had no jurisdiction to consider it, the petition should have been promptly dismissed.

Throughout the remainder of the proceedings, the filing and pendency of this petition to terminate furnished the peg upon which the carrier hung excuse after excuse for its refusal to perform its obligations under its policy. Obviously, the carrier was attempting to

obtain some action by the board under the provisions of the second paragraph of section 413 of the statute, as amended by the Act of April 13, 1927, P. L. 186, 77 PS §§ 772-774. That paragraph authorizes, inter alia, the modification or termination of an award as of a time *subsequent* to its date, upon proof of a change in the physical condition of an employee which has occurred since the award was made.

An unappealed from award is final as of its date, but the statute "contemplates changes in awards thereafter, corresponding to changes in the condition of disability of the claimant": *Kilgore v. State Workmen's Ins. Fund et al.,* 127 Pa. Superior Ct. 213, 193 A. 294. Here, the carrier did not seek a termination of the award upon the ground of a change in disability occurring *since* the date of the award but for a change alleged to have occurred a year and a half before the award was made. There is nothing in the statute authorizing such procedure. At most the filing of this petition amounted to an admission, that appellee had been disabled as a result of the accident (contrary to the original position of appellant), at least until June 26, 1934, or a period of thirty-one weeks, entitling him to compensation in the principal sum of $279, with interest to June 3, 1937, amounting to $55.46, or a total of $334.46. It is disclosed by the record that during the course of subsequent proceedings appellants tendered appellee's counsel this amount, but coupled the tender with a demand that it be accepted in full settlement of all compensation due appellee.

Appellants' real complaint is that the board erred in finding that appellee was totally disabled as a result of the accident when the award was made and had been ever since the accident occurred. They were given notice of the award on January 22, 1936. If they then honestly believed, and were prepared to show, that appellee had not been disabled or that his disability

had ended on June 26, 1934, the law afforded them not only a remedy by appeal to the common pleas, which was adopted, but also an auxiliary remedy under section 426 of the statute, as amended by the Act of April 13, 1927, P. L. 186, 77 PS § 871. It is there provided that the board, upon petition of any party and cause shown, may, "at any time before the court of common pleas of any county ...... to whom an appeal has been taken ...... shall have taken final action thereon," and within one year from its previous action, grant a rehearing of any petition upon which an award has been made. It is also provided that if the board shall grant a rehearing it shall file in the common pleas a certified copy of its order granting the same, and it shall thereupon be the duty of the court to cause the record of the case to be remitted to the board. The appeal was pending in the common pleas from February 11, to December 15, 1936. At any time within that period, appellants could have petitioned for a rehearing before the board. They neglected to avail themselves of that remedy and ultimately abandoned the other.

When counsel for appellee found it necessary to issue execution for the collection of the liquidated portion of the judgment, an unnecessary complication was injected into the case. Instead of issuing a fi. fa. against the employer or the insurance carrier, or both, an attachment execution was issued to No. 22 September Term, 1937, of the court below, naming the employer as defendant and the insurance carrier as garnishee. This method seems to have been adopted by analogy with the proceedings frequently instituted to enforce liability against insurance companies issuing certain types of policies of automobile indemnity insurance. Interrogatories were served; the carrier in its answers admitted its policy was in full force at the date of the injury to appellee, but took the technical position that it did not owe any money to the

insured employer. Upon a rule for judgment upon the answers, the court below held that the legal effect of the admissions of the carrier was that it had the money in its hands for which it had indemnified the employer, and on October 18, 1937, entered judgment against it as garnishee in the same form and amounts as were set forth in the judgment entered upon the award.

The companion appeal to No. 7 October Term, 1938, of this court, is by the insurance company, as garnishee, from the judgment so entered. From what we have said about the direct liability of an insurance carrier to an injured employee it is apparent that attachment execution is not an appropriate form of execution in workmen's compensation cases. As a proper form of execution process was subsequently issued upon the original judgment, we shall vacate the judgment upon the answers at No. 22 September Term, 1937, of the court below.

A subsequent attachment execution was issued November 8, 1937, to No. 121 December Term, 1937, for the collection of instalments of compensation which accrued since December 15, 1936, the date of the original judgment. Interrogatories were issued and answers filed but no further action was taken upon this writ.

On the same date a fi. fa. was issued against the employer to No. 38 December Term, 1937, of the court below, for the collection of the liquidated portion of the judgment on the award—$1,572.

The issuing of this appropriate writ brought on the controversy in the course of which the order appealed from to the above number and term of this court was made. On December 7, 1937, the bank petitioned for, and obtained, a rule to show cause why execution upon the fi. fa. should not be stayed. The only grounds assigned in the petition for staying execution were: (a) the above considered untenable contention that a

definite period for payment of compensation should have been fixed in the award; (b) the filing in 1937 of the petition for termination and its alleged pendency before the board; and (c) the tender of compensation for thirty-one weeks. Its prayer was that execution be stayed "until such time as the amount of compensation actually due" may be determined by the board. In the answer it was set forth, inter alia, that the sum of $1,572 liquidated in the judgment and for the collection of which the fi. fa. had been issued, was the aggregate, with interest, of the payments due when the judgment was entered, and that this sum was not subject to any future legal determination, but was and is a definitive final judgment."

Every contention advanced in behalf of the employer is ruled against it, in principle, by the case of *Zimmer v. Closky et al.*, 122 Pa. Superior Ct. 142, 186 A. 403. There, as here, the employer sought to evade the effect of a judgment entered upon an award by filing a petition *subsequent* to its entry to have the award terminated as of a date *prior* to the date of the judgment.

We adopt the following excerpt from the opinion of the court below, sustaining its order discharging the rule:

"The claimant was injured on November 14, 1933, and although a period of over four years has elapsed since the date of his injury he has not yet received any compensation. He has an award from the compensation board, a judgment in this court upon this award, ...... and now he is met as an answer to his execution upon his judgment for the amount that had accrued upon the award at the time of the rendition of the judgment, by the allegation that three and a half years ago his disability had ceased and that a petition presented on June 2, 1937, to the workmen's compensation board, setting forth this claim, supersedes the judgment of this court and stays his claim for compen-

sation since June 26, 1934, until this question is passed upon by the compensation board.

"It is now too late to attack that portion of the judgment upon the award for payments which had accrued at the time of the rendition of the judgment on December 15, 1936. There was no appeal [prosecuted] from this judgment and it therefore becomes conclusive upon the defendants."

It is clear that appellants have no defense against the payment forthwith of the liquidated portion of the judgment upon the award. It is also clear that they will be liable to execution for the payments which have accrued since December 15, 1936, with interest on each from the date it should have been paid, when these payments have been liquidated in the manner prescribed by the statute. Their liability to appellee for payments, as they accrue, will continue, as stated, until the end of the five hundred weeks' period, unless his death should intervene or they obtain, in the manner provided by section 413, supra, a modification or termination of the award by reason of the appellee's disability having decreased or ceased subsequent to the date of the judgment.

The order of December 23, 1937, discharging the rule to stay execution and permitting appellee to proceed with his execution, is affirmed.