## Flowers, Appellant, *v.* Liggett & Myers Tobacco Co.

Argued March 13, 1941.

Before Keller, P. J., Cunningham, Stadtfeld, Rhodes and Hirt, JJ.

*David L. Ullman,* with him *Solomon Hurwitz,* for appellant.

*Herbert G. Marvin,* with him *Frederick L. Fuges* and *Ralph N. Kellam,* for appellee.

OPINION BY CUNNINGHAM, J., June 30, 1941:

The claimant in this workmen's compensation case has appealed from an order of the court below, reversing the action of the compensation authorities in reinstating, in 1939, a terminated award made to claimant in 1936, setting aside the final receipt executed by claimant acknowledging payment thereof, and directing payment of additional compensation for an indefinite period upon the theory of a continuing total disability.

The pivotal question involved is whether or not a finding of fact made by Referee Casey on November 25, 1936, that claimant's disability ceased on the 18th of that month, and his award of compensation up to that date, from which finding and award claimant neither appealed nor sought a rehearing, constituted, as a matter of law, a final and conclusive termination of the liability of his employer and its insurance carrier for the payment of compensation to him by reason of accidental injuries sustained in the course of his employment on June 15, 1936? If they did, the board had no jurisdiction to entertain claimant's subsequent petition, filed March 22, 1937, to set aside his final receipt, and its subsequent proceedings based upon that petition were void.

The board, after making its own findings of fact relative to the circumstances under which the award of November 25, 1936, was made, concluded it was not binding upon claimant, found he was still totally disabled, and ordered that payments of compensation be

continued for a possible period of 500 weeks from the time of the accident.

Upon the appeal of the defendants to the court below, their contention that the award of 1936 was a final adjudication of the extent of their liability was sustained in a comprehensive opinion by DANNEHOWER, J. Our examination of the record has led us to the conclusion that this case was correctly disposed of by the court below; its order reversing the action of the board and dismissing claimant's petition of March 22, 1937, will be affirmed, largely upon the opinion of that court.

In order that the respective contentions of the parties may be sufficiently indicated, a review of the history of the case is necessary. These facts are uncontroverted: While in the course of his employment as a salesman for the defendant tobacco company at a weekly wage of $32, the car which claimant was driving on June 15, 1936, was struck by the truck of a third party named Bennett; claimant's injuries consisted of a "concussion of brain, contusions of forehead, nose, and left arm," causing total disability. Contending that his injuries were attributable to the negligence of the third party, claimant retained an attorney, George Linton, Esq., of Philadelphia, to enforce collection of his damages. Conferences with the representatives of the public liability insurance carrier of the third party, National Mutual Insurance Company of Baltimore, resulted in an agreement to settle for a consideration of $1,000. Meanwhile, his employer had been paying claimant his full wages in lieu of compensation and continued to do so until October 27, 1936.

Prior to the consummation of the settlement the employer's compensation insurance carrier, American Mutual Liability Insurance Company, gave notice to the insurance carrier of the third party of its claim to be subrogated, under the provisions of Section 319 of our Workmen's Compensation Act of June 2, 1915, P. L.

736, 77 PS §671, to the rights of Flowers under the proposed adjustment. Thereupon, the carrier for the third party declined to consummate the settlement until the liability of the employer and its insurance carrier to pay compensation to claimant had been legally established and releases executed to the former by the latter. Accordingly, Flowers filed his claim-petition with the board on October 27, 1936; it was assigned to Referee James P. Casey, who fixed November 23d as the date of hearing thereon.

All parties in interest were represented by counsel at the hearing. As no answer had been filed to the claim-petition there was no occasion for taking any testimony relative to the circumstances of the accident or the nature of claimant's injuries; the only question open was whether his disability had ceased. In lieu of oral testimony upon that question, claimant's counsel, in the presence and hearing of claimant, placed the following stipulation upon the record:

"Mr. Linton: It is agreed that on June 15, 1936, the claimant was injured, and at that time he was in the employ of Liggett & Myers Tobacco Company; that his average weekly wages were $32, and that from June 15 until November 19, 1936 he was out of employment by reason of this accident, and that during the period from June 15 until October 27 the Liggett & Myers Company paid his full wages in lieu of compensation, and that he has since that time effected a settlement with a third party, and the amount of this settlement would be over and above any money he would receive in compensation. *The claimant at this date is able to return to work if he had employment* and will be re-employed just as soon as a vacancy occurs in the employment he was in when disabled." (Italics supplied.)

On November 25, 1936, the referee, upon the basis of the record thus submitted to him by the parties, made findings of fact relative to the circumstances under which

claimant's injuries were sustained, and as to their effect expressly found, "he was immediately and thereafter totally disabled until November 19, 1936 as of which latter date any and all disability due to or resulting from said accident had ceased and he was able to resume his former occupation."

A formal award was then entered against the employer and its insurance carrier directing payment of compensation to claimant at the rate of $15 per week "from October 27, 1936, (to which date he was paid his full wages in lieu of compensation) to November 18, 1936, [by which time it was stipulated all disability had ceased]—a period of 3-2/7 weeks or the sum of $49.29," with interest, etc. On December 9th a copy of the award was mailed claimant along with notice that it would be final unless an appeal was taken in the manner indicated upon the back of the notice.

Claimant did not appeal from the award, nor did he petition for a rehearing, but on December 17th signed a final receipt, duly approved by the board, acknowledging payment of the award and stating he "was able to return to work on 11-19-36."

The settlement with the third party and his insurance carrier was then consummated and the required releases executed. Out of the $1,000 agreed upon, claimant, after the deduction of expenses, counsel fees, etc., received the net amount of $648.

Ordinarily this would have been the end of the entire matter. The defendant employer and its carrier had a right to assume that all liability to claimant by reason of the accident of June 15, 1936, had been fully discharged, subject only to one of the contingencies contemplated by the second paragraph of Section 413 of the statute, as amended April 13, 1927, P. L. 186, 77 PS §772, viz., a possible reinstatement and continuance of the award upon the ground of a *recurrence* of claimant's disability within one year after its payment, prop-

erly brought to the attention of the board by a timely petition and duly proven. No application was ever made by claimant to have the award reinstated under this provision.

With this recital of uncontroverted facts appearing upon the record, we pass to the inception of the controversy which resulted in the present appeal. On March 22, 1937, claimant filed, under the provisions of Section 434 of the statute, as amended June 26, 1919, P. L. 642, 77 PS §1001, the following petition to set aside the final receipt executed by him on December 17, 1936:

"I was totally disabled at the time of signing the final receipt and am still totally disabled. I signed the final [receipt] because I needed funds to exist and would not be paid until I signed. I am still in a position to prove by medical testimony that I am still totally disabled."

It clearly appears from this petition that claimant was not endeavoring to secure additional compensation by reason of a *recurrence* of disability, but solely upon the ground of a *continuing* total disability which had never ceased, nor changed in extent, since the time of his accident. It should be noted that the petition contains no specific averment of any of the grounds enumerated in the statute for setting aside a final receipt—"fraud, coercion, or other improper conduct of a party, . . . . . . mistake of law or of fact." The hint of coercion through withholding funds necessary to claimant's existence could scarcely have been made in good faith; he had received $32 each week up to October 27, 1936. It is not even suggested in the petition that claimant was not fully aware of his exact physical condition when he certified in the receipt that he was able to return to work on November 19, 1936.

In their answer, the employer and its carrier denied the receipt was signed while claimant was totally disabled or because he needed funds and averred it had

been prepared upon the basis of the award of Referee Casey fixing the "duration of [claimant's] disability," and after claimant had notice of the decision of the referee. It was also asserted in the answer that, as claimant had not appealed from the action of the referee, "the case is res adjudicata."

The petition and answer were assigned to Referee Thomas Lawly who fixed May 11, 1937, as the date of hearing. At that hearing claimant attended without counsel; the employer and its carrier were represented by one of the claim managers of the latter. Under examination by the referee, claimant admitted he had received by mail a copy of the award of Referee Casey, had taken no appeal from it, and had signed the final receipt under the advice of his counsel, Mr. Linton, and in the absence of any representative of the employer. He asserted, however, that his attorney told him, "You have a year to open that up and get your compensation again," and that he "didn't know at the time [he] was signing off [his] compensation." At a subsequent hearing Linton denied having made the statement attributed to him by claimant.

As to his physical condition at the date of the receipt, claimant testified he was then under medical treatment and unable to do any work; that he had not improved in any way since that time and had been unable to engage in any employment.

The ground assigned by claimant at this hearing for setting aside the receipt was thus stated by him: "My lawyer is the one I had confidence and faith in, and he didn't handle it right for me. He said 'We can't get this thousand dollars for you until you sign off compensation, and then later on, if you aren't well enough you can apply for it.' That is the reason we applied only about a month ago."

No testimony was submitted on behalf of defendants, their representative having elected to stand upon the

answer to the petition. Accepting claimant's testimony at its face value, it may be observed at this point that if there was any "improper conduct" in the procuring of the receipt it was not upon the part of any representative of either defendant. Nor is there any suggestion of any mistake of fact upon the part of claimant with respect to his actual physical condition when he signed the receipt. In this connection we may state that, in the opinion of a majority of the members of this court, the case does not turn upon the extent, if any, of claimant's disability when the above quoted stipulation was placed upon the record, or at the time the final receipt was signed. We shall, therefore, omit any discussion of the medical testimony upon that question. It may be assumed, for the purpose of disposing of this appeal, but is not conceded by defendants, that claimant has been totally disabled ever since the date of the accident.

On May 29, 1937, Referee Lawly made findings of fact in which he quoted the previous award of Referee Casey, noted that no appeal had been taken from it, reviewed the testimony taken at the hearing before him, and entered a conclusion of law to the effect that "since no appeal was filed from the award of Referee Casey" he was "without jurisdiction in the matter." An order dismissing the petition to set aside the receipt was accordingly entered.

Upon claimant's appeal, the board held in effect that the proceedings before Referee Casey amounted to no more "than an agreement executed by the parties which is itself subject to review for mistake," and remanded the record to Referee Lawly for the purpose of taking testimony from both parties relative to all the circumstances surrounding the making of the award of November 25, 1936.

We are unable to see any justification for this procedure. The clear purpose of the petition was to obtain a reinstatement of the terminated award as soon as the

approximate period of forty-three weeks, which would be covered by the $648 received by claimant out of the settlement and for which the defendants would in any event be entitled to credit, had expired. Even if the proceedings in November, 1936, had been nothing more than a voluntary agreement of the parties, rather than a final, definite and appealable adjudication, it could have been reinstated only upon one ground—a *recurrence* of disability. The first paragraph of Section 413, evidently referred to by the board, applies only to *existing* agreements and provides for their review and modification upon the ground of mistake, etc; it does not apply to the *reinstatement* of terminated agreements. The second paragraph does provide, inter alia, for the reinstatement, within the limitations therein prescribed, of terminated agreements as well as awards, upon averment and proof of a recurrence of disability. But, as we have already seen, there was neither averment nor proof of any recurrence in this case.

Nor do we consider the case of *Kilgore v. State Workmen's Insurance Fund,* 127 Pa. Superior Ct. 213, 193 A. 294, cited and relied upon by the board, controlling here. In that case the original compensation agreement, which contained no reference to any injury to claimant's eyes, had been terminated by a final receipt. When the employee's eyes became seriously affected and loss of sight was threatened, he petitioned to have the receipt set aside upon the ground that the injuries to his eyes had been omitted from the agreement by mistake. The medical testimony upon the question of a causal connection between the accident and the condition of claimant's eyes was conflicting. The parties agreed that the referee, without making any findings, should enter an award for total disability for a specified period and then for partial "to continue until his disability ceases or changes in extent." In holding that claimant was entitled to petition at a later date, when

loss of vision had occurred, for a modification of the award into one for total disability, KELLER, P. J., pointed out that the award by its "express terms contemplated changes by way of increase or decrease in the amount of compensation and in the period and duration of the award or agreement, in accordance with the claimant's actual condition as revealed by the test of time." The award with which we are now concerned contained no provisions of a like character.

Pursuant to the instructions of the board the present referee held additional hearings on January 26 and March 9, 1938, at which claimant was represented by Solomon Hurwitz, Esq., of Harrisburg, where claimant was then living, and the defendants by Herbert Marvin, Esq., of Philadelphia.

At these hearings claimant, testifying relative to the hearing at which the stipulation was made, said that Mr. Linton told him, "you can open your case within a year anyways, that won't hurt your compensation. When your thousand dollars is used up you can start in again to get your compensation." He also testified Linton said, "I know you are not able to go to work yet, Flowers, but you will have to say you are so we can have this hearing over and collect that third party agreement." In another portion of his testimony claimant said Linton told him, "If you are still disabled at the end of that time (when the proceeds of the settlement had been used up) you will still be able to get your compensation."

Mr. Linton, when sworn at the second hearing, positively denied he had made the statements credited to him by claimant. His testimony was that claimant's decision to accept the offer of $1,000 in settlement was entirely voluntary upon his part and that claimant himself decided, "it was not necessary to have any medical testimony at [that] hearing."

Another statement made by claimant was that

Linton told him he had a year within which to appeal his case. Linton's testimony was that no conversation of this kind ever occurred.

The substance of Linton's testimony was that he did not advise claimant to the effect that he could secure additional compensation upon proving that he was *disabled* but did inform him that he could petition for reinstatement of the award if there should be a *recurrence* of disability within one year. His version of the advice given by him to claimant appears in the following excerpt from his testimony upon cross-examination: "Q. Mr. Linton, you informed Mr. Flowers that he would have a right to reopen his case within one year after the proceedings or decision of the compensation referee? A. No, I didn't. I didn't stop with that advice. I didn't advise him along those lines because that isn't the law in Pennsylvania. Q. Will you, please, clarify just [what] you did inform him along those lines? A. Yes. I told him that he could establish if he so desired or wished to, or if he felt he could establish it, that he was disabled permanently and that if he established that he would receive $15 per week as payment under the Workmen's Compensation Act. And at the same time his law suit, if he wished to institute suit in Norristown, would continue; and in the event of a verdict in his law suit in Norristown any payments made by the workmen's compensation insurance carrier would have to be paid back again, subrogated. I took the word subrogation and tried desperately hard to explain what that technical word meant to him. I think that he understood. ...... Q. And did you not advise Mr. Flowers either at that time or subsequently that he still would have one year from the date of those proceedings to reopen the case? A. I advised Mr. Flowers under Section 413, I think it is, of the Act that in the event of a recurrence of his injury the State of Pennsylvania allowed a man who was injured one year with-

in which to apply for additional compensation, if he could prove his case. Q. In other words, your advice to him was that in spite of the proceedings before Referee Casey he would still have certain rights under the Workmen's Compensation Act to recover compensation? A. If a recurrence occurred of the injury, yes."

In the course of his testimony Linton identified a letter written by him to the claimant under date of March 30, 1937, evidently in response to a request by claimant for certain records and data incident to the settlement. In this letter Linton, after enumerating other documents, said he was enclosing his (Linton's) "copy of petition for compensation which you (claimant) filed with the workmen's compensation board." The letter concludes: "You have one year from the date when we had our last hearing within which to file this petition. I would suggest that you have Mr. Kirsch help you."

The reference to "one year" from the hearing before Referee Casey evidently applies to some petition which claimant intended to file without the assistance of Linton. It could not apply to the claim-petition previously mentioned in the letter. If claimant was proposing to file a petition for a rehearing or for reinstatement upon the ground of a recurrence of disability, the statement that he had one year within which to file it was entirely correct, and if it referred to a petition to set aside the final receipt, such petition could be filed "at any time" within the general limitations of the statute. We are unable to see that the letter supports claimant's version of the advice given him by the writer of the letter.

This conflict in the testimony was for the compensation authorities, but if claimant's version be accepted it does not follow that the receipt was founded upon a mistake of law, within the legislative intent of Section 434. If the attorney chosen by claimant advised him

erroneously with respect to his rights under the statute, that is a matter between them; neither the employer nor its carrier had any part in it, nor did either of them influence or mislead claimant in any way with relation to the course of action he could or should pursue against them or the third party. The opinion of this court in the case of *Tragle v. Hollis Chocolate Co.*, 111 Pa. Superior Ct. 98, 169 A. 472, relied upon by counsel for claimant as an illustration of the effect of mistaken advice by a claimant's physician, does not support their present contention. That was a hernia case and the only question raised below or on the appeal was whether the facts brought it within the hernia amendment.

Claimant did not indicate in his testimony just when he discovered he had been wrongly advised, as he now alleges, by his attorney, but it must have been prior to the filing, on March 22, 1937, of his petition to set aside the receipt and therefore well within the year during which he had a remedy by petitioning, under Section 426, for a rehearing.

Upon the testimony taken at both hearings the referee made eight findings of fact in which he found, inter alia, that the wages paid claimant up to October 27, 1936, had been paid in lieu of compensation; that the $648 received by him out of the settlement should be considered as an advance payment of compensation for a period of 43 1/5 weeks—expiring August 25, 1937—and that claimant had been totally disabled since the date of the accident by reason thereof. The finding now material reads:

"Eighth: That the evidence of claimant's counsel at the time of the original settlement indicated that the final receipt was fully explained at the time the claimant signed it and that he understood what he was signing. However, from the evidence your referee is of the opinion and so finds as a fact, that this receipt was signed by the claimant in order that he might be in a

position to consummate the settlement with the third party responsible for the accident, and that he had not recovered at that time sufficiently to return to his employment."

The referee then concluded as a matter of law that the receipt should be set aside and made an award of compensation at the rate of $15 per week beginning on August 26, 1937, and to continue, within the limitations of the statute, until claimant's disability ceased or changed in extent. The effect of the order was to reinstate, as of August 26, 1937, the original award which, by its terms, terminated on November 18, 1936.

Upon defendants' appeal to the board, the order of the referee and all his findings of fact, except the above quoted eighth, were affirmed.

Appreciating that the eighth finding did not sufficiently support the referee's order, the board in the course of its opinion set it aside and substituted the following as its own findings of fact, in which it included at least one conclusion of law and an observation upon the force of certain testimony.

"Eighth: The testimony of claimant's counsel at the time of the original settlement indicates and we so find as a fact, that the claimant was advised by counsel that if the disability were permanent or if the law entitled him to relief, that the proceedings before the referee could be set aside. We find as a fact that at the time the proceedings before Referee Casey were gone through and the final receipt executed that it was done by the claimant under the mistaken opinion given to him by his counsel that it covered only his condition until such time as the net results of the third party settlement would be used up in compensation payments.

"We find as a fact that the proceedings before the referee were initiated as a result of a mutual plan by the defendant insurance carrier and the claimant's counsel to establish a record of the accident, and that

they were acquiesced in by the claimant because of the advice of his attorney that under the law of Pennsylvania, he had a further opportunity to prove that additional compensation would be payable to him if that were the fact.

"We further find as a fact that at the time of the hearing before the referee, no testimony was taken and that the purported decision of the referee is entitled to no greater effect than would be the execution of an agreement to the same effect between the parties. We find as a fact that the claimant was at that time and at all times since has been totally disabled as a result of the accident.

"We further find as a fact that the insurance carrier has so far paid not one cent in compensation to the claimant, and that the check sent to the claimant by the insurance carrier as a result of the referee's 'award' was endorsed by the claimant and returned to the insurance carrier. This in itself is eloquent testimony of the fictitious nature of the transaction."

In lieu of the referee's conclusion of law the board substituted the following:

"From the foregoing findings of fact, the board concludes as a matter of law that the proceedings before the referee were acquiesced in and the final receipt, which was an integral part of this proceeding, executed by the claimant as a result of a mistake of law.

"We therefore conclude as a matter of law that the claimant is entitled to have the proceedings before the referee and the final receipt, which in their entirety in fact constitute an agreement, set aside and compensation for total disability should be reinstated at the expiration of the period covered by the wages paid in lieu of compensation, plus the period covered by the $648 received in the third party settlement, to the benefits of which the insurance carrier is entitled to be subrogated."

From what we have said above relative to the testimony of claimant's attorney it is evident that the finding that his testimony indicates he advised claimant the proceedings could be set aside if his "disability were *permanent*," is not supported by the record. Nor are we impressed with the assertion that the returning to the carrier of the check issued in payment of the award "is eloquent testimony of the fictitious nature of the transaction," particularly as the board found the carrier was entitled to the amount thereof under its right of subrogation.

We adopt the following excerpts from the opinion of the court below:

"It is well settled that an award entered by a referee upon a claim petition filed by the claimant is final and conclusive in its application to the period included up to the date of the award when no appeal is taken therefrom and when no petition for a rehearing is filed. If any mistake of fact or law is made in the award it can only be corrected by appeal or by petition for rehearing: *Putt v. Laher Ice Cream Co.,* 105 Pa. Superior Ct. 536, 161 A. 622; *Roeschen v. Dietrich,* 107 Pa. Superior Ct. 298, 163 A. 63; *Ernst v. Sassaman,* 117 Pa. Superior Ct. 353, 178 A. 317; *Tinsman v. Jones & Laughlin S. Corp.,* 118 Pa. Superior Ct. 516, 180 A. 175; *Borneman v. H. C. Frick Coke Co.,* 122 Pa. Superior Ct. 391, 186 A. 223, and *Zerby v. Reading Co.,* 125 Pa. Superior Ct. 397, 189 A. 681. . . . . . .

"There is no evidence of record which supports the findings of the board that the proceedings before the referee were initiated as the result of a mutual plan by the defendant insurance carrier and claimant's counsel to establish [a] record of the accident or that the proceedings before the referee were a fictitious transaction. The evidence clearly shows that the insurance [carrier] of the third party responsible for the accident, refused to consummate settlement on its $1,000 offer unless the

employer's insurance carrier released its subrogation rights; that employer's insurance carrier refused to release its subrogation rights until its compensation liability had been established after hearing before a workmen's compensation referee and that accordingly claimant filed his claim petition to have his compensation so fixed. The action and conduct of the third party's insurance company and that of employer's insurance carrier in this respect was entirely proper and the method adopted by requesting claimant to file a claim petition was necessary for the protection of all the parties then interested. There is no evidence to show a plan or concerted action resulting in the filing of the claim petition with a connotation of anything improper or that the proceedings before the referee were to be a fictitious transaction in accordance with an agreed compensation arrived at by any mutual plan prior to the hearing before the referee.

"Likewise, there is no evidence of record to support the finding of the board that the 'purported decision of the referee is entitled to no greater effect than would be the execution of an agreement' between the parties. A careful examination of the entire record and the evidence discloses that the parties never entered into a compensation agreement as that term is generally used. At the hearing before the referee, the record shows that there was no stipulation of record between counsel for the defendant and counsel for the claimant relating to any facts. What did happen was that claimant's counsel, in the presence of the claimant, and according to claimant's testimony with the knowledge of the claimant, stipulated of record voluntarily that claimant's disability had ceased on November 19, 1936, prior to the hearing, when claimant knew this was not a correct statement of fact. On the basis of this voluntary statement of record by claimant's counsel, the referee made his finding of fact and award. Such evi-

dence does not support the finding of the board that the order of the referee is not to be considered as an award but as an agreement of the parties.

"It follows from the foregoing that Referee Casey on November 25, 1936, made a definitive order, awarding compensation for a period which had already elapsed when the award was made. The liability of the defendant was definitely stated, both as to the period of compensation and the total amount due. ...... The referee's award of November 25, 1936, not having been appealed from and not having been made the subject of rehearing within the statutory period is a final adjudication of defendant's liability up to November 25, 1936. ...... Subsequent to the award the claimant had no right of further action except under Section 413, paragraph 2, relating to recurrence of disability, or Section 426, relating to rehearings. Since claimant did not avail himself of these rights within the statutory period further consideration of his claim is now barred by law: *Borneman v. H. C. Frick Coke Co.*, 122 Pa. Superior Ct. 391, 394, 395, 186 A. 223; *Shay v. N. Side Bank & Trust Co.*, 132 Pa. Superior Ct. 53, 61, 200 A. 302.

"At the hearing before the first referee on November 23, 1936 claimant knew the extent of his injuries and it is conceded that as to that there could be no mistake of fact: *Palino v. Hazle Brook Coal Company*, 112 Pa. Superior Ct. 15, 171 A. 82; *Kitchen v. Miller Bros. Company*, 115 Pa. Superior Ct. 141, 147, 174 A. 919. ......

"In the instant case the claimant knew his disability both at and after the hearing before the referee, he received a copy of the decision of the referee and his award together with notice that such an award was final, if not appealed from within the time set forth in the notice. Notwithstanding, the claimant failed to avail himself of any of the remedies open to him to correct any error in the award of November 25, 1936, with the

result that it is now conclusive as to his disability on that date. There is no contention in the instant case that there had been a recurrence of disability: See: *Roeschen v. Dietrich,* 107 Pa. Superior Ct. 298, 303, 163 A. 63. ......

"Section 434 of the Workmen's Compensation Act gives the final receipt the weight of prima facie evidence of the termination of the employer's liability to pay compensation under such agreement or award. The burden of proof is upon the claimant to establish his right to have a final receipt set aside by evidence which is reasonably satisfactory. The evidence must be more than a scintilla. Unless the receipt is given the weight specified, and unless the employe is required to produce convincing evidence that such receipt was procured by fraud, coercion or other improper conduct or founded upon a mistake of fact or law, then the taking of a receipt is a useless formality and employers and insurance carriers have no way of knowing the extent of their liability nor its limitations. ......

"Claimant well knew the extent of his disability; he voluntarily accepted the third party settlement after consultation with his wife and explanation by his attorney; he was ready to return to work; he was trying to get back his former position; he paid his doctor the $66 he owed him for services from June 15th until November 25th; he understood the significance of the compensation insurance carrier releasing its subrogation rights to the liability insurance carrier of the tortfeasor and also of his signing the final receipt; and without calling his family doctor as a witness, seeks to set aside the final receipt by his own vague and indefinite testimony, charging his attorney with fraud, which is strongly contradicted by that attorney. To set aside a final receipt, evidence of mistake must be of such quantity and quality as to make it certain to the triers of

fact by evidence that is reasonably satisfactory, that a mistake in fact or law had been made.

"A careful reading of the record forces us to the conclusion that this is a case of an employe who [instead of going to trial in an action at law for his damages] voluntarily accepted a third party lump sum settlement in full for his injuries and compensation; that he signed the final receipt understanding that the compensation insurance carrier was releasing its right of subrogation; that he was ready to return to his former employment, but was dismissed and had sought employment as a window-dresser in Norristown; that he moved to Harrisburg, where he consulted another lawyer and doctor, who found that he was still suffering some disability, which the doctors in Harrisburg, guided by the claimant's own history of his case, described as traumatic psychoneurosis, and that he has sought to set aside the final receipt by blaming his former attorney. We cannot excuse or overlook an important factor in this case and that is, that claimant sat in silence before the referee and heard his own attorney state to the referee 'that claimant at this date (November 23, 1936) is able to return to work if he had employment, and will be reemployed just as soon as a vacancy occurs in the employment he was in when disabled.' If he was at that time totally disabled and he knew it, the dictates of common honesty required him to speak. Claimant by his own acts, in order to secure the settlement, deprived the compensation carrier of its right to subrogation and misled it into executing a release. In our opinion, the final receipt should not have been set aside on the evidence submitted."

The assignments of error to the order of the court below of January 9, 1940, reversing the action of the board and dismissing the petition to set aside the final receipt, are severally overruled.

Order affirmed.